591 A.2d 703

Linda A. THOMPSON and Donald D. Thompson,

v.

The NASON HOSPITAL and Edward D. Schultz, M.D.

**Appeal of The NASON HOSPITAL.**

Supreme Court of Pennsylvania.

Argued March 8, 1989.

Decided May 20, 1991.

Reargument Denied July 15, 1991.

John David Rhodes, Pittsburgh, for appellant.

Donald A. Tortorice, Duane, Morris & Heckscher, Harrisburg, for amicus curiae Hosp. Ass'n of Pennsylvania.

Karen L. Steele, Leopold, Eberhardt, Goldstein, Heslop & Steele, Altoona, David S. Shrager, Joanna Hamill Flum, Shrager, McDaid, Loftus & Flum, Philadelphia, for Linda A. Thompson and Donald D. Thompson.

Michael Heintzman, John W. Jordan, IV, Pittsburgh, for Edward D. Schultz, M.D.

Richard C. Angino, Neil J. Rovner, Angino & Rovner, Harrisburg, for amicus curiae Pennsylvania Trial Lawyers Ass'n.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, ZAPPALA and PAPADAKOS, JJ.

## OPINION

ZAPPALA, Justice.

Allocatur was granted to examine the novel issue of whether a theory of corporate liability with respect to hospitals should be recognized in this Commonwealth. For the reasons set forth below, we adopt today the theory of corporate liability as it relates to hospitals. We therefore affirm the Order of the Superior Court, 370 Pa.Super. 115, 535 A.2d 1177, which reversed the Order of the Court of Common Pleas of Blair County, who in turn had originally granted the Nason Hospital's motion for summary judgment.

Our review of this case begins with the recognition that a motion for summary judgment is governed by Pa.R.C.P. 1035(b) which in pertinent part provides:

The judgment sought shall be rendered if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Summary judgment under Rule 1035 is granted only in the clearest of cases where the right is clear and free from doubt. *Consumer Party of Pennsylvania v. Commonwealth,* 510 Pa. 158, 507 A.2d 323 (1986). The moving party has the burden of proving the nonexistence of any genuine fact. *Penn Center House, Inc. v. Hoffman,* 520 Pa. 171, 553 A.2d 900 (1989). All doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. *Thompson Coal Company v. Pike Coal Company,* 488 Pa. 198, 412 A.2d 466 (1979).

Considering this predicate to our analysis, we now turn to the record which contains the facts underlying this personal injury action. At approximately 7 a.m. on March 16, 1978, Appellee, Linda A. Thompson, was involved in an automobile accident with a school bus. Mrs. Thompson was transported by ambulance from the accident scene to Nason Hospital's emergency room where she was admitted with head and leg injuries. The hospital's emergency room personnel were advised by Appellee, Donald A. Thompson, that his wife was taking the drug Coumadin, that she had a permanent pacemaker, and that she took other heart medications.

Subsequent to Mrs. Thompson's admission to Nason Hospital, Dr. Edward D. Schultz, a general practitioner who enjoyed staff privileges at Nason Hospital, entered the hospital via the emergency room to make his rounds. Although Dr. Schultz was not assigned duty in the emergency room, an on-duty hospital nurse asked him to attend Mrs. Thompson due to a prior physician-patient relationship. Dr. Schultz examined Mrs. Thompson and diagnosed her as

suffering from multiple injuries including extensive lacerations over her left eye and the back of her scalp, constricted pupils, enlarged heart with a Grade III micro-systolic murmur, a brain concussion and amnesia. X-rays that were taken revealed fractures of the right tibia and right heel.

Following Dr. Schultz's examination and diagnosis, Dr. Larry Jones, an ophthalmologist, sutured the lacerations over Mrs. Thompson's left eye. It was during that time that Dr. Schultz consulted with Dr. Rao concerning orthopedic repairs. Dr. Rao advised conservative therapy until her critical medical condition improved.

Dr. Schultz knew Mrs. Thompson was suffering from rheumatic heart and mitral valve disease and was on anticoagulant therapy. Because he had no specific training in establishing dosages for such therapy, Dr. Schultz called Dr. Marvin H. Meisner, a cardiologist who was treating Mrs. Thompson with an anticoagulant therapy. Although Dr. Meisner was unavailable, Dr. Schultz did speak with Dr. Meisner's associate Dr. Steven P. Draskoczy.

Mrs. Thompson had remained in the emergency room during this time. Her condition, however, showed no sign of improvement. Due to both the multiple trauma received in the accident and her pre-existing heart disease, Dr. Schultz, as attending physician, admitted her to Nason Hospital's intensive care unit at 11:20 a.m.

The next morning at 8:30 a.m., Dr. Mark Paris, a general surgeon on staff at Nason Hospital, examined Mrs. Thompson. He found that she was unable to move her left foot and toes. It was also noted by Dr. Paris that the patient had a positive Babinski—a neurological sign of an intracerebral problem. Twelve hours later, Dr. Schultz examined Mrs. Thompson and found more bleeding in her eye. He also indicated in the progress notes that the problem with her left leg was that it was neurological.

On March 18, 1978, the third day of her hospitalization, Dr. Larry Jones, the ophthalmologist who treated her in the

emergency room, examined her in the intensive care unit. He indicated in the progress notes an "increased hematuria secondary to anticoagulation. Right eye now involved". Dr. Schultz also examined Mrs. Thompson that day and noted the decreased movement of her left leg was neurologic. Dr. Paris's progress note that date approved the withholding of Coumadin and the continued use of Heparin.

The following day, Mrs. Thompson had complete paralysis of the left side. Upon examination by Dr. Schultz he questioned whether she needed to be under the care of a neurologist or needed to be watched there. At 10:30 a.m. that day, Dr. Schultz transferred her to the Hershey Medical Center because of her progressive neurological problem.

Linda Thompson underwent tests at the Hershey Medical Center. The results of the tests revealed that she had a large intracerebral hematoma in the right frontal temporal and parietal lobes of the brain. She was subsequently discharged on April 1, 1978, without regaining the motor function of her left side.

On April 11, 1979, Appellees filed a notice complaint against The Nason Hospital, Edward D. Schultz, M.D. and E.J. Schultz, M.D. with the office of Administrator for Arbitration Panels for Health Care pursuant to the Health Care Services Malpractice Act, 40 P.S. §§ 1301.101 et seq. In response to a rule filed by The Nason Hospital, Appellees filed a complaint on July 3, 1979. The complaint alleged *inter alia* that Mrs. Thompson's injuries were the direct and proximate result of the negligence of Nason Hospital acting through its agents, servants and employees in failing to adequately examine and treat her, in failing to follow its rules relative to consultations and in failing to monitor her conditions during treatment. Similar allegations were contained in a separate count of the complaint as to Dr. E.D. Schultz's negligence. However, as to consultations, it was alleged that Dr. Schultz failed to contact Mrs. Thompson's cardiologist relative to administration of anticoagulants.

The action was subsequently transferred to the Court of Common Pleas of Blair County.[1]

On December 12, 1986 without objection of the other parties, the trial court granted a motion for summary judgment filed on behalf of Dr. E.J. Schultz. While Dr. E.J. Schultz was dismissed from the case, Dr. Edward D. Schultz remains a defendant in the action below. Nason Hospital subsequently filed a motion for summary judgment on April 17, 1986. The motion was briefed and argued. The trial court then entered an order granting summary judgment thereby dismissing Nason Hospital as a defendant to this action. On January 7, 1987, Appellees' Application for Reconsideration was denied.

An appeal was taken to Superior Court.[2] In reversing the trial court's order granting summary judgment in favor of Nason Hospital, Superior Court held (1) genuine issues of material fact existed as to whether Dr. Schultz was an ostensible agent of Nason Hospital; (2) Nason Hospital could be found liable on the theory of corporate liability for adverse effects of treatment or surgery approved by doctors although the doctors were not employees of the hospital and (3) it was appropriate that the lower court decide during the course of the later stages of this litigation whether sufficient evidence may be established by the Thompsons on their agency theory. *Thompson v. Nason Hospital,* supra. Nason Hospital then filed a Petition for Allowance of Appeal with this Court.

The first issue Nason Hospital raised is whether the Superior Court erred in adopting a theory of corporate liability with respect to a hospital. This issue had not

1. In *Heller v. Frankston,* 504 Pa. 528, 475 A.2d 1291 (1984) we held all of the arbitration procedures of the Act are nullified as unconstitutional. We previously declared unconstitutional in *Mattos v. Thompson,* 491 Pa. 385, 421 A.2d 190 (1980). Section 1301.309 of the Act which gave health care arbitration panels original exclusive jurisdiction over medical malpractice claims.

2. Dr. Edward D. Schultz was not a party to the appeal taken to either Superior Court or this Court.

heretofore been determined by the Court.[3] Nason Hospital contends that it had no duty to observe, supervise or control the actual treatment of Linda Thompson.

Hospitals in the past enjoyed absolute immunity from tort liability. *See McDonald v. Massachusetts General Hospital,* 120 Mass. 432, 21 Am.Rep. 529 (1876). The basis of that immunity was the perception that hospitals functioned as charitable organizations. *See Forrest v. Red Cross Hospital,* 265 S.W.2d 80 (Ky.1954), overruled 348 S.W.2d 930 (Ky.1961). However, hospitals have evolved into highly

**3.** Nason Hospital presented in its Petition for Allowance of Appeal the following questions:

A. Did the Superior Court err in adopting a theory of corporate liability with respect to a hospital which has not heretofore been determined by this Court? (Suggested answer: In the affirmative).

B. Did the Superior Court err in finding that there was a material issue of fact with respect to the corporate liability of the Nason Hospital? (Suggested answer: In the affirmative).

Petition p. 1.

However, in its Brief, Nason Hospital presented these questions for our consideration:

I. Absent the pleading and proof of special circumstances not present in this case, does a hospital corporation have a duty to supervise, manage or control the ongoing medical services provided by an independent, staff physician to wife-plaintiff during her confinement in the hospital so as to be subject to liability for damages resulting from alleged negligence then committed by that physician?

II. Absent the pleading and proof of special circumstances not present in this case, may defendant-hospital be found vicariously liable to plaintiffs as ostensible master or employer of wife-plaintiff's attending physician whose services to wife-plaintiff during a three day hospital admission were initiated and thereafter continued because he was her personal family physician and was by coincidence present in the emergency room when she was brought there by ambulance from the scene of the accident?

III. If defendant-hospital is not entitled to summary judgment with respect to both the "corporate liability" and ostensible agency issues above stated, should partial summary judgment be entered in favor of hospital-defendant with respect to the issue of actual agency of wife-plaintiff's attending physician where both the trial court and the Superior Court have determined that the record docs not support a genuine issue concerning such actual agency?

Appellant's Brief p. 3.

We will only consider those questions set forth in Nason Hospital's Petition for Allowance of Appeal. Pa.R.A.P. 1115(a)(3). The additional questions raised in its brief are deemed to be waived. *Dilliplaine v. Leigh Valley Trust Company,* 457 Pa. 255, 322 A.2d 114 (1974).

sophisticated corporations operating primarily on a fee-for-service basis. The corporate hospital of today has assumed the role of a comprehensive health center with responsibility for arranging and coordinating the total health care of its patients.[4] As a result of this metamorphosis, hospital immunity was eliminated. *See Pierce v. Yakima Valley Memorial Hospital,* 43 Wash.2d 162, 260 P.2d 765 (1953).

Not surprisingly, the by-product of eliminating hospital immunity has been the filing of malpractice actions against hospitals. Courts have recognized several bases on which hospitals may be subject to liability including respondeat superior, ostensible agency and corporate negligence. *See Ramone v. Mani,* 535 S.W.2d 654 (Tex.Civ.App.—Eastland 1975) (negligence of nurses in counting sponges during surgery imputed to hospital under doctrine of respondeat superior), aff'd, 550 S.W.2d 270 (Tex.1977); *Seneris v. Haas,* 45 Cal.2d 811, 291 P.2d 915 (1955) (anesthesiologist, whose negligence resulted in patient's paralysis, was ostensible agent of hospital; and *Darling v. Charleston Community Memorial Hospital,* 33 Ill.2d 326, 211 N.E.2d 253 (1965), cert. denied 383 U.S. 946, 86 S.Ct. 1204, 16 L.Ed.2d 209 (1966) (corporate negligence of hospital based on holding that hospital owed patient an independent duty of care).

The development of hospital liability in this Commonwealth mirrored that which occurred in other jurisdictions. Initially, suits against hospitals qualifying as charities failed because such hospitals were not liable vicariously or otherwise. *Benedict v. Bondi,* 384 Pa. 574, 122 A.2d 209 (1956); and *Yorston v. Pennell,* 397 Pa. 28, 153 A.2d 255 (1959). In *Flagiello v. Pennsylvania Hospital,* 417 Pa. 486, 208 A.2d 193 (1965), we abolished the doctrine of charitable immunity, which had shielded hospitals from suit by their patients. The concept of hospital liability in Pennsylvania further evolved in *Tonsic v. Wagner,* 458 Pa. 246, 329 A.2d 497 (1974) when we held that the hospital was not

---

**4.** Note, *Medical Malpractice—Ostensible Agency and Corporate Negligence,* 17 St. Mary's L.J. 551 (1986). Annotation, *Hospital's Liability for Negligence in Failing to Review or Supervise Treatment Given by Doctor or To Require Consultation,* 12 A.L.R.4th 57 (1982).

as a matter of law immunized from any liability for negligence of its personnel during an operation, thereby recognizing respondeat superior as a basis for hospital liability. Subsequently, Superior Court in *Capan v. Divine Providence Hospital,* 287 Pa.Super. 364, 430 A.2d 647 (1980) adopted the theory of ostensible agency, when it held that the trial court erred in failing to instruct the jury that it could find the hospital vicariously liable for negligence of a physician, despite the fact the physician was an independent contractor. See also *Simmons v. St. Clair Hospital,* 332 Pa.Super. 444, 481 A.2d 870 (1984). We now turn our attention to the theory of corporate liability with respect to the hospital, which was first recognized in this Commonwealth by the court below.

Corporate negligence is a doctrine under which the hospital is liable if it fails to uphold the proper standard of care owed the patient, which is to ensure the patient's safety and well-being while at the hospital. This theory of liability creates a nondelegable duty which the hospital owes directly to a patient. Therefore, an injured party does not have to rely on and establish the negligence of a third party.[5]

The hospital's duties have been classified into four general areas: (1) a duty to use reasonable care in the maintenance of safe and adequate facilities and equipment—*Chandler General Hospital Inc. v. Purvis,* 123 Ga. App. 334, 181 S.E.2d 77 (1971); (2) a duty to select and retain only competent physicians—*Johnson v. Misericordia Community Hospital,* 99 Wis.2d 708, 301 N.W.2d 156 (1981); (3) a duty to oversee all persons who practice medicine within its walls as to patient care—*Darling v. Charleston Community Memorial Hospital,* supra.; and (4) a duty to formulate, adopt and enforce adequate rules

5. Southwick, *The Hospital's New Responsibility,* 17 Clev.–Mar.L.Rev. 146 (1968); but see Southwick, *Hospital Liability, Two Theories Have Been Merged,* 4 J.Legal Med. 1, 45–46 (1983) (no viable difference between doctrines of respondeat superior, ostensible agency, and corporate negligence).

and policies to ensure quality care for the patients—*Wood v. Samaritan Institution,* 26 Cal.2d 847, 161 P.2d 556 (Cal.Ct.App.1945). See Comment, *The Hospital–Physician Relationship: Hospital Responsibility for Malpractice of Physicians, 50 Wash.L.Rev. 385 (1975); Note, Medical Malpractice—Ostensible Agency and Corporate Negligence,* 17 St. Mary's L.J. 551 (1986).

Other jurisdictions have embraced this doctrine of corporate negligence or corporate liability such as to warrant it being called an "emerging trend". *See Fridena v. Evans,* 127 Ariz. 516, 622 P.2d 463 (1980); *Bost v. Riley,* 44 N.C.App. 638, 262 S.E.2d 391 (1980); *Felice v. St. Agnes Hospital,* 65 A.D.2d 388, 411 N.Y.S.2d 901 (1978); *Corleto v. Shore Memorial Hospital,* 138 N.J.Super. 302, 350 A.2d 534 (1975); *Albain v. Flower Hospital,* 50 Ohio St.3d 251, 553 N.E.2d 1038 (1990) and *Pedroza v. Bryant,* 101 Wash.2d 226, 677 P.2d 166 (1984).

A critical step toward recognition of this theory of hospital liability already has been taken in this Commonwealth. In *Riddle Memorial Hospital v. Dohan,* 504 Pa. 571, 475 A.2d 1314 (1984), we found that the appropriate duty of care a hospital owes to a person brought into an emergency room is set forth in the Restatement of Torts 2d § 323 (1965) which provides:

One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if

(a) his failure to exercise such care increases the risk of such harm, or

(b) the harm is suffered because of the other's reliance upon the undertaking.

504 Pa. at 576–577, 475 A.2d at 1316. In *Riddle,* the patient, after exhibiting signs of a heart attack, was taken from his residence to Riddle Memorial Hospital's emergency room. There he was examined and treated not only by his

family physician, who was not on staff at Riddle, but also by the medical staff on duty in the emergency room. Notwithstanding the determination that he had a coronary occulsion, the patient was taken from the emergency room twenty minutes after his arrival to Lankenau Hospital where his family physician had staff privileges. This transfer occurred in full view of Riddle's emergency room staff and without objection. Additionally, the emergency room resident did not execute a signed approval as required by Riddle's by-laws. The patient died enroute to Lankenau Hospital.

Today, we take a step beyond the hospital's duty of care delineated in *Riddle* in full recognition of the corporate hospital's role in the total health care of its patients. In so doing, we adopt as a theory of hospital liability the doctrine of corporate negligence or corporate liability under which the hospital is liable if it fails to uphold the proper standard of care owed its patient. In addition, we fully embrace the aforementioned four categories of the hospital's duties. It is important to note that for a hospital to be charged with negligence, it is necessary to show that the hospital had actual or constructive knowledge of the defect or procedures which created the harm. See *Fridena*, 127 Ariz. at 519, 622 P.2d at 466; and *Purcell v. Zimbelman*, 18 Ariz.App. 75, 83, 500 P.2d 335, 343 (1972). Furthermore, the hospital's negligence must have been a substantial factor in bringing about the harm to the injured party. *Hamil v. Bashline*, 481 Pa. 256, 392 A.2d 1280 (1978).

The final question Nason Hospital raises is did Superior Court err in finding that there was a material issue of fact with respect to the hospital's duty to monitor and review medical services provided within its facilities. Nason Hospital contends that during Linda Thompson's hospitalization, it did not become aware of any exceptional circumstance which would require or justify its intervention into her treatment. The Hospital Association of Pennsylvania, as *amicus curiae*, argues that it is neither realistic nor appro-

priate to expect the hospital to conduct daily review and supervision of the independent medical judgment of each member of the medical staff of which it may have actual or constructive knowledge.

Conversely, Appellees argue that Nason Hospital was negligent in failing to monitor the medical services provided Mrs. Thompson. Specifically, Appellees claim that the hospital ignored its Rules and Regulations governing Medical Staff by failing to ensure the patient received adequate medical attention through physician consultations.[6] Appellees also contend that Nason Hospital's medical staff members and personnel treating Mrs. Thompson were aware of her deteriorating condition, brought about by being over anticoagulated, yet did nothing.

■■■ It is well established that a hospital staff member or employee has a duty to recognize and report abnormalities in the treatment and condition of its patients. *Brannan v. Lankenau Hospital*, 490 Pa. 588, 417 A.2d 196 (1980). If the attending physician fails to act after being informed of such abnormalities, it is then incumbent upon the hospital staff member or employee to so advise the hospital authorities so that appropriate action might be taken. See *Darling*, 211 N.E.2d, 253, 258. When there is a

---

6. Appellees rely on subsections b through d of Rule 16 which provide in pertinent part:

(b) *Consultant*
A consultant must be well-qualified to give an opinion in the field in which an opinion is sought. The status of the consultant is determined by the Medical Staff on the basis of an individuals training, experience and competence.

(c) *Essentials of a Consultation*
A satisfactory consultation includes examination of the patient and his record. A written opinion signed by the consultant must be included in the medical records. When operative procedures are involved, the consultation note, except in emergencies, shall be recorded prior to the operation.

(d) *Responsibility for Requesting Consultations*
The patient's physician is responsible for requesting consultation as indicated. It is the duty of the hospital staff through its Chief of Service and Executive Committee to make certain that members of the staff do not fail in the matter of calling consultations as needed. R.152a, 153a.

failure to report changes in a patient's condition and/or to question a physician's order which is not in accord with standard medical practice and the patient is injured as a result, the hospital will be liable for such negligence. See *The Poor Sisters of St. Francis Seraph of the Perpetual Adoration, Inc. v. Sharon Catron*, 435 N.E.2d 305 (Ind.Ct. App.1982).

■ A thorough review of the record of this case convinces us that there is a sufficient question of material fact presented as to whether Nason Hospital was negligent in supervising the quality of the medical care Mrs. Thompson received, such that the trial court could not have properly granted summary judgment on the issue of corporate liability.

The order of Superior Court is affirmed. Jurisdiction is relinquished.

FLAHERTY, J., files a dissenting opinion in which NIX, C.J., joins.

FLAHERTY, Justice, dissenting.

I dissent. The opinion of the majority adopts an entirely new concept of liability, i.e., "corporate liability," to be applied to hospitals in order to hold them liable as guarantors of the quality of care afforded by independent staff members. "Corporate liability" is totally distinct from the theory of respondeat superior. It is also to be distinguished from liability based upon ostensible agency.

In adopting this new theory of liability, the majority is making a monumental and ill-advised change in the law of this Commonwealth. The change reflects a deep pocket theory of liability, placing financial burdens upon hospitals for the actions of persons who are not even their own employees. At a time when hospital costs are spiraling upwards to a staggering degree, this will serve only to boost the health care costs that already too heavily burden the public. Traditional theories of liability, such as respon-

deat superior, have long proven to be perfectly adequate for establishing corporate responsibility for torts.

Further, in recognizing "corporate liability," there is no logical basis upon which to limit this extension of liability to hospitals alone. Rather, all corporations, regardless of their lines of business, will be assertedly responsible for the torts of their independent contractors. Fearfully, such extensions of liability could well follow from the present decision.

In short, I would reverse the order of the Superior Court and thereby reject the theory of corporate liability. The order of the Court of Common Pleas granting summary judgment in favor of Nason Hospital was proper, since the alleged tortfeasors were not shown to be agents or employees of the hospital.

NIX, C.J., joins the dissenting opinion.