**Hamacek v. Mercy Hospital of Johnstown**

C.P. of Cambria County, no. 1993-818.

*Michael C. George,* for plaintiff.

*Frank J. Hartye,* for defendant Good Samaritan Hospital.

*Steven B. Larchuk,* for defendant Tong Seng Tjoa M.D.

*Dennis J. Stofko,* for defendant Sanders & Associates.

 SWOPE, LEAHEY, CREANY, *JJ.,* December 5, 1995—Currently before the court are several motions for summary judgment by defendants Good Samaritan Hospital, Tong Seng Tjoa M.D., and Sanders and Associates. The complaint against defendants Mercy Hospital and Dr. Tjoa alleges both negligence and the intentional tort of failure to obtain informed consent. The complaint only alleges negligence against defendant Sanders and Associates.[1]

---

1. A fair reading of the complaint at Count IV demonstrates that the plaintiff's cause of action against Sanders and Associates is only for negligence. Count IV states:

"(44) Paragraphs 1 through 43 of this complaint are incorporated by reference as though more fully set forth herein.

"(45) Plaintiff believes and therefore avers that at all times pertinent to this matter, defendant Tjoa was an agent, servant, or employee of defendant Sanders and Associates and, during his treatment of plaintiff, was acting in the scope of that agency. As such, by operation of law, Sanders and Associates is legally responsible for the actions of defendant Tjoa which directly and proximately caused the injuries and damages to plaintiff as set forth in paragraphs 30 and 31 of this complaint, *supra.*"

Paragraphs 30 and 31 of the complaint deal with "direct and proximate result of the aforesaid negligence" of Dr. Tjoa, as opposed to paragraphs 32 through 35 which set forth the informed consent issue. Summary judgment on the negligence issue will therefore dismiss the complaint against Sanders and Associates.

In her brief the plaintiff has not challenged the defendant's motion for summary judgment on the negligence issue. Moreover, her expert report addresses only the informed consent issue and fails to address any issues of causation of her injuries. Without expert testimony, of course, the plaintiff cannot prevail on her negligence suit. *Brophy v. Brizuela,* 358 Pa. Super. 400, 517 A.2d 1293, (1986). In short, the plaintiff has effectively abandoned her negligence claims. The court will therefore grant summary judgment on the issue of negligence in favor of all defendants. The sole remaining issue is the cause of action for lack of informed consent.

## I. STANDARD FOR SUMMARY JUDGMENT

For a motion for summary judgment to be granted, there can be no genuine issue of material fact and the moving party must be entitled to an entry of judgment as a matter of law. *McNeal v. City of Easton,* 143 Pa. Commw. 151, 598 A.2d 636 (1991). Moreover, the court is required to resolve all doubts in favor of the non-moving party. See *Taylor v. Tukanowicz,* 270 Pa. Super. 581, 435 A.2d 181 (1981). The court will therefore view all pertinent facts in the light most favorable to the plaintiff.

## II. LACK OF INFORMED CONSENT AGAINST DR. TJOA

Dr. Tjoa asks for summary judgment on the lack of informed consent claim against him. He bases his motion for summary judgment upon the plaintiff's signature on a consent form. Dr. Tjoa claims that the signature conclusively proves the plaintiff's full awareness of and consent to the spinal anesthesia procedure.

The court will deny the motion because a genuine issue of material fact remains notwithstanding the executed consent form. It is for the jury to decide whether the plaintiff's consent to the spinal anesthesiology was conditional upon the consent of her surgeon, Dr. Ridella. If it was conditional, there also remains a jury question about whether Dr. Ridella actually consented to the procedure before it was done. Contrary to Dr. Tjoa's argument, it is irrelevant to the cause of action that Dr. Ridella would have approved the procedure had he been consulted. If Dr. Tjoa did not actually consult him before administering the spinal anesthesia procedure, then the patient's consent was not obtained. The pertinent issue is purely whether the plaintiff's alleged conditions to her consent were met.[2]

## III. LACK OF INFORMED CONSENT AGAINST MERCY HOSPITAL

The remaining issue concerns the cause of action against Mercy Hospital for the battery known as "lack of informed consent." In its brief and at argument the plaintiff asserted that Mercy Hospital was vicariously liable for Dr. Tjoa's actions under an "ostensible agency" theory. As noted previously, however, the plaintiff lacks an expert report on causation. The plaintiff for that reason cannot proceed down the legal avenue of negligence. On the other hand, Count II of the complaint states a cause of action *directly* against Mercy Hospital for battery. It does so without mention of vicarious liability. The court will therefore examine only the issue of whether the plaintiff has a direct claim

---

2. Thus, the court will not apply the "no blood, no foul" rule of playground basketball that was suggested by Dr. Tjoa's counsel.

against the hospital for failure to obtain informed consent.

The law of this Commonwealth on a hospital's failure to obtain informed consent is, admittedly, in a state of flux. Until recently, there was little doubt that hospitals could not be held liable under *respondeat superior* for its agents', servants', and employees' failure to obtain informed consent. *Margotta v. Lancaster General Hospital,* 47 D.&C.3d 300 (1987); *George v. Ayoub,* 50 D.&C.3d 322 (1988) (citing *Margotta* with approval).

Confusion began after the Pennsylvania Supreme Court's decision in *Thompson v. Nason Hospital,* 527 Pa. 330, 591 A.2d 703 (1991). In that case the Supreme Court adopted "as a theory of hospital liability the doctrine of corporate [liability] or corporate [negligence] under which the hospital is liable if it fails to uphold the proper standard of care owed its patient." *Id.* at 341, 591 A.2d at 708. After the *Thompson* decision, common pleas courts began to contradict each other on this subject. See *Campana v. Robert Packer Hospital,* 12 D.&C.4th 347 (1991) (under "corporate liability" announced in *Thompson,* hospital may be liable for its physician's failure to obtain informed consent); contra, *Babcock v. Bedwell,* 12 D.&C.4th 444 (1991) *(Thompson* did not alter *respondeat superior* principles applicable to hospitals, nor abolish the rule that hospitals cannot be held vicariously liable for the intentional tort of lack of informed consent) and, *Krout v. Martin,* 50 D.&C.3d 472 (1989) ("[C]orporate negligence is a narrowly tailored cause of action allowing liability *only* for negligence 'in supervising the quality of the medical care' received.")

In its latest decision on this subject, the Superior Court sided with the view expressed in *Babcock* and

*Krout, supra.* In *Friter v. Iolab Corp.,* 414 Pa. Super. 622, 607 A.2d 1111 (1992) the Superior Court reaffirmed that in the vast majority of cases a hospital cannot directly commit a battery. It offered a twofold explanation: First, a hospital is not a tangible actor who can *cause* a harmful or offensive contact with the plaintiff's person. Second, only in the rarest of circumstances can it be said that a hospital as a corporate entity can *intend* a harmful or offensive contact.

In *Friter,* the Superior Court decided that only in certain exceptional circumstances can a hospital be directly liable for failure to obtain informed consent. The court explained that through certain policies a hospital can intentionally cause a third person such as a physician to initiate a harmful or offensive contact with the patient's person. *Friter, supra* at 630, 607 A.2d at 1115 (citing Restatement (Second) of Torts, §18: "An actor is subject to liability to another for battery if (a) he acts intending to cause a harmful or offensive contact with the person of the other or a third person . . . .") Under the facts of *Friter,* the Superior Court also found that the hospital both intended and caused the harmful or offensive contact: The hospital intended its patient to come into contact with a foreign substance in an investigational study. It caused the contact by directing physicians to carry out the procedure without ever obtaining the informed consent of the patient. *Id.* at 632, 607 A.2d at 1115.

Notably, in *Friter* the Superior Court did not base its decision on the *Thompson* case. It distinguished *Thompson,* saying:

"[A]ppellant did not ask us to apply [corporate liability] to the pleadings and transcript of this case,

but rather requested [that] we expand the doctrine of corporate liability to encompass battery actions. This we will not do, as corporate liability has to date been premised on proof of negligence. However, it is interesting to note that at the crux of the corporate liability doctrine is the notion that certain duties run directly from the hospital to its patients." *Friter, supra* at 632 n.1, 607 A.2d 1115-16 n.1.[3]

The "corporate negligence" doctrine announced in *Thompson* may create a negligence action against hospitals who fail to supervise physicians who in turn fail to obtain their patients' consent to medical procedures. It does not, however, expand the law regarding hospitals' liability for the intentional tort of failure to obtain informed consent. The court is unaware of any controlling cases other than *Friter* in which liability has been imposed on a hospital for this tort. Accordingly, direct liability for lack of informed consent may be imposed on a hospital only under the same exceptional fact pattern found in *Friter.*

The facts of the instant case do not suggest that any type of investigational procedure is involved. They

---

3. The Superior Court unfortunately failed to clarify other cases such as *Babcock, supra* and *Margotta, supra*, which tend to confuse the intentional tort of lack of informed consent with the corporate negligence cause of action on a hospital's failure to supervise its agents and employees. *Friter, supra* at 627, 607 A.2d at 1113. Certainly the question of a breach of duty by the hospital would be proper in a negligence action. This court is left to wonder, however, exactly what place an analysis of hospital's "duty" has in an action on the intentional tort of lack of informed consent. The court can only surmise that discussions of such a duty are simply a shorthand reference to the question of *whether or not enough information was provided by the hospital to assure that consent was intelligently given by the patient.*

do not suggest that the hospital promulgated any specific policies with the intent that Dr. Tjoa would perform the spinal anesthesia. For those reasons, Mercy Hospital as a corporate entity did not intend nor cause the specific contact about which the plaintiff complains. This case does not fit into the exception carved out by the *Friter* decision. Mercy Hospital's motion for summary judgment on the issue of informed consent will therefore also be granted.

Accordingly, the following order is entered.

## ORDER

And now, December 5, 1995, it is hereby ordered and decreed, that Sanders and Associates' motion for summary judgment is granted, and the counts of the complaint against it are dismissed with prejudice;

It is further ordered and decreed, that Mercy Hospital's motion for summary judgment is granted, and the counts of the complaint against it are dismissed with prejudice;

It is further ordered and decreed, that Tong Seng Tjoa's motion for summary judgment is granted in part as to the negligence count of the complaint, but denied in part as to the informed consent count of the complaint;

It is further ordered and decreed, that this court's amended scheduling order of July 21, 1995, is vacated, and;

It is further ordered and decreed, that this court believes the amount in controversy does not exceed $25,000, and for that reason it is transferred to arbitration pursuant to local rule 1301 CC.