J-A19010-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| JOHN BUKOWSKI | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| WILLIAM HEIM, M.D., AND | : | |
| HEMATOLOGY AND ONCOLOGY | : | |
| ASSOCIATES OF NORTHEASTERN PA, | : | |
| P.C.; SCRANTON QUINCY HOSPITAL | : | |
| COMPANY, LLC D/B/A MOSES | : | |
| TAYLOR HOSPITAL; SCRANTON | : | |
| QUINCY HOME CARE SERVICES, LLC | : | No. 1344 MDA 2021 |
| D/B/A COMMONWEALTH HEALTH OF | : | |
| MOSES TAYLOR | : | |

Appeal from the Judgment Entered October 19, 2021
In the Court of Common Pleas of Lackawanna County Civil Division at
No(s):  2015-03662

BEFORE:   BOWES, J., KING, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY BOWES, J.:                 **FILED: DECEMBER 23, 2022**

John Bukowski ("Plaintiff") appeals from the judgment entered in this

medical malpractice action upon a jury verdict in favor of William Heim, M.D.,

Hematology and Oncology Associates of Northeastern Pa, P.C., Scranton

Quincy Hospital Company, LLC d/b/a Moses Taylor Hospital, and Scranton

Quincy Home Care Services, LLC d/b/a Commonwealth Health of Moses Taylor

(collectively "Defendants").  We affirm.

_____

[*] Former Justice specially assigned to the Superior Court.

We provide the following background information, taken from the trial testimony viewed in the light most favorable to Defendants as the verdict winners. Plaintiff was born with hemophilia and was primarily treated for his condition at Hershey Medical Center ("Hershey"). Specifically, Plaintiff's blood at baseline contained only ten percent of the expected level of Factor VIII, one of the factors necessary for his blood to clot properly, while normal levels are between fifty and 100 percent. Plaintiff utilized a Factor VIII blood product to remedy the deficiency and had in the past administered infusions of the product at home.

Plaintiff also suffered from hemorrhoids and was referred by Hershey to Dr. Joseph R. Bannon, who performed hemorrhoidectomy procedures at Moses Taylor Hospital ("Moses Taylor"). Hershey, contemplating an in-patient procedure, indicated that the hospital would have to stock up on Factor VIII product to administer to Plaintiff in the event of an active bleed. Dr. Bannon, in turn, referred Plaintiff to Dr. William Heim, a hematologist/oncologist with Hematology & Oncology Associates of Northeastern Pennsylvania, P.C., to formulate a plan for managing Plaintiff's care.

Ultimately, Dr. Heim developed the following plan. Dr. Bannon would perform the procedure at Moses Taylor on an out-patient basis, as was usual for that type of surgery. A five-to-seven-day supply of Advate, a brand of Factor VIII product, was shipped directly to Plaintiff's home, and he was given instructions on how to manage his twice-daily infusions. Plaintiff was to bring

a dose of Advate with him to Moses Taylor for infusion one hour before the surgery. Afterwards, Moses Taylor would leave the IV port in for Plaintiff to administer a post-operative Factor VIII infusion at 2:00 a.m. at home. Thereafter, Plaintiff would have his blood tested daily to monitor his Factor VIII levels and follow up with Dr. Heim to manage the dosages.

Plaintiff underwent the surgery at Moses Taylor on June 6, 2013, and was discharged with pain medication, stool softener, and instructions to proceed with his Advate infusions. His blood tested at fifty-nine percent on next day, with no bleeding. On June 8, 2013, Plaintiff had his first post-surgery bowel movements, causing him to begin bleeding at the surgical site. Plaintiff went to the emergency room at Moses Taylor, where Dr. Manoj Das, a first-year resident, erroneously informed Plaintiff that the hospital had no Factor VIII products available. In actuality, what Moses Taylor lacked was the Advate brand of Factor VIII, but had available in its pharmacy over 6,000 units of Helixate, a comparable Factor VIII product, and Humate-P, another product used to treat a Factor VIII deficiency. Plaintiff had an infusion of Advate at Moses Taylor from his home supply, bringing his Factor VIII level up to 135 percent. However, rather than remain there to investigate the cause of the bleeding, Plaintiff chose to check himself out against medical advice so he could seek treatment at Hershey.

Plaintiff collapsed shortly after returning home and was taken back to Moses Taylor by ambulance. As Plaintiff steadfastly expressed his desire to

be treated at Hershey, arrangements were made to fly Plaintiff there via helicopter after he was stabilized through, *inter alia*, the administration of 4,000 units of Helixate from the Moses Taylor pharmacy. When his blood was first tested upon arrival at Hershey, Plaintiff's Factor VIII level was at 282 percent, yet his bleeding continued. More Factor VIII product was administered to bring his level to 524 percent, but his bleeding did not stop. After Plaintiff had additional sutures placed at the surgical site and the affected area was packed, the bleeding ceased. Plaintiff developed pneumonia at Hershey and was hospitalized for two weeks. He thereafter complained of experiencing weakness and incontinence.

Plaintiff sued Dr. Heim, Moses Taylor, and their related entities for malpractice.[1] Specifically, Plaintiff claimed that "due to various 'lack of communication' issues, impermissible and improper record keeping and medical chart practices, and other deviations from accepted standards of care," Moses Taylor did not, or believed that they did not, have sufficient Factor VIII product to prevent and treat his bleeding, and Dr. Heim failed to ensure that the hospital would have an adequate supply. **See** Trial Court Opinion, 10/13/21, at 3. Plaintiff sought both compensatory and punitive damages.

---

[1] Plaintiff also sued Dr. Bannon, his surgeon, but the claims against him were dismissed before trial and are not at issue in this appeal.

- 4 -

Discovery produced evidence that Moses Taylor's recordkeeping was imperfect. For example, the records from Plaintiff's emergency visit with Dr. Das repeatedly referenced an attending physician who was on vacation, notes concerning Moses Taylor's final administration of Factor VIII product to Plaintiff indicated that the infusion was given after his helicopter had left for Hershey, and some documents were not signed until months after they were created. Plaintiff also proffered expert reports from a bevy of different experts, including a pharmacist, a colorectal surgeon, and an emergency department doctor, who expressed opinions regarding various actors' deviations from the standard of care in relation to Moses Taylor's recordkeeping and the availability of Factor VIII product for Plaintiff at Moses Taylor. Defendants filed motions *in limine* to exclude all or part of these opinions, largely based upon the witnesses' lack of expertise in the specific areas upon which they opined. The trial court granted several motions in part, limiting the scope of testimony several witnesses could offer at trial.

At the conclusion of an eight-day trial, the jury returned a verdict in favor of Defendants, finding no negligence. Following the denial of his motion for post-trial relief, judgment was entered on the verdict and Plaintiff filed a timely notice of appeal to this Court. Thereafter, both Plaintiff and the trial court complied with Pa.R.A.P. 1925.

Plaintiff presents the following questions for our determination, which we have re-ordered for ease of disposition:

1.    Whether the trial court erred in not granting Plaintiff's motion for post-trial relief where the verdict was against the weight of the evidence as: (i) Dr. Das whom [sic] saw [Plaintiff] when [he] presented testified there was no Factor VIII available for [Plaintiff]; and (ii) Plaintiff's experts testified that Defendants' actions/inactions were not only negligent, but egregious and a severe breach from the standard [of care]?

2.    Whether the trial court erred and/or abused its discretion in limiting the testimony/opinions of Plaintiffs' experts at trial based on the qualifications and experience of Plaintiff's experts, and the trial court's application/interpretation of the MCARE Act[, 40 P.S. §§ 1303.101-1303.910,] and *Thompson v. Nason Hosp*., 591 A.2d 703 (Pa. 1991)?

Plaintiff's brief at 4 (cleaned up).

We begin with Plaintiff's claim that he is entitled to a new trial because the verdict was against the weight of the evidence. The following legal standards apply to our review of this claim:

In evaluating a claim that a verdict is against the weight of the evidence, Pennsylvania courts employ a shocks-the-conscience test. The trial court should grant a new trial only in truly extraordinary circumstances, *i.e.*, when the jury's verdict is so contrary to the evidence as to shock one's sense of justice and the award of a new trial is imperative so that right may be given another opportunity to prevail.

The trial court's authority to override a jury verdict on weight-of-the-evidence grounds is so narrowly circumscribed because questions of weight and credibility are for the factfinder. A trial judge cannot grant a new trial because of a mere conflict in testimony or because the trial judge on the same facts would have arrived at a different conclusion. The court nonetheless has some discretion to grant a new trial where it concludes the verdict is against the weight of the evidence. However, determining whether the verdict was objectively shocking is within the sole discretion of the trial court, and rightly so, as it has had a first-hand view of the evidence.

In contrast, our review is necessarily second-hand. As a result, a party who failed to convince the trial judge that the verdict was against the weight of the evidence may obtain relief on appeal only if it shows that the trial court acted capriciously or palpably abused its discretion.

*Kimble v. Laser Spine Inst., LLC*, 264 A.3d 782, 800 (Pa.Super. 2021)

(cleaned up).

The trial court rejected Plaintiff's weight-of-the-evidence arguments,

explaining as follows:

Plaintiff points to the testimony of Dr. Manoj Das. Dr. Das was a resident in the Moses Taylor emergency department when Plaintiff presented with bleeding the day after his surgery. There seems [to be] little dispute that Dr. Das testified both in his deposition and at trial that he was told that the Moses Taylor Pharmacy did not have Factor [VIII], and that he related that to Plaintiff and his wife. Plaintiff's analysis, however, stops there. Had the jury's consideration of evidence stopped at that point, Plaintiff's argument would be meritorious. However, there was evidence submitted by the Defendants contradicting Das'[s] belief. Indeed, nurse Anne Marie Paris testified that she administered Factor [VIII] to Plaintiff in Moses Taylor Hospital prior to his transfer to Hershey Medical Center. Other witnesses testified contrary to Dr. Das'[s] belief. Nurse Arthur Price testified that he never heard anyone relate to him that there was no Factor [VIII] at the hospital.

Next, Plaintiff argues that the trial testimony of Dr. [Evadine G.] Marcolini "confirms that the actions/inactions of defendant Moses Taylor Hospital, and their (sic) agents were not only negligent but severely/egregiously below the standard of care." Plaintiff goes on to identify various parts of Dr. Marcolini's testimony where she opined that the actions in Moses Taylor's emergency department deviated from the standard of care. She criticized the medical records system in place, she criticized and expressed concerns regarding the resident physicians and how they interacted with attending physicians at the time. Much was made of the fact that although the chart reflected an attending physician identified as Dr. Deck, Dr. Deck testified that he never

saw Plaintiff and that he was not involved in the decision to transfer Plaintiff to Hershey Medical Center.

Plaintiff next argues that the trial testimony of his expert, Dr. Henry Rinder, highlighted communication issues and issues with the policies and procedures of Hematology & Oncology Associates, as well as Dr. Heim, characterizing their actions/inactions as not only negligent but also severely/egregiously below the standard of care. In Dr. Rinder's opinion, there were "either miscommunications or failures to communicate that severely affected [Plaintiff's] medical condition." Like the testimony of Dr. Marcolini, the testimony of Dr. Rinder was also based on the premise that, according to Plaintiff, "both [*sic*] Dr. Heim, Hematology & Oncology Associates, and Moses Taylor Hospital had a duty to provide competent medical care to [Plaintiff] which included having an adequate amount of Factor [VIII] to treat him should any complications, or bleeding, arise."

Plaintiff also argues that the testimony he presented from Julio Viola, M.S., Pharm.D., further confirms that the actions/inactions of the Defendants and their agents were not only negligent but severely/egregiously below the standard of care. Plaintiff presented the testimony of Mr. Viola, an accomplished pharmacist with a bachelor's degree in pharmacy, a master's degree in clinical pharmacy, and a doctorate in pharmacy. For the last six years, he has been a self-described successful management executive, managing and developing centralized pharmacy services. . . .

The premise of Plaintiff's argument that the verdict was against the weight of the evidence is that there was insufficient Factor [VIII] available at Moses Taylor when Plaintiff returned to the emergency room following his discharge from surgery. Plaintiff fails, indeed, refuses, to acknowledge the evidence in the record contradicting his premise. Indeed, Plaintiff's own expert, Mr. Viola, testified that the hospital did in fact have Factor [VIII] on hand.

Dr. Marcolini initially testified that Plaintiff had not received Factor [VIII] at Moses Taylor. However, Dr. Marcolini also testified that Mr. Viola, the pharmacist, was in a better position to determine whether Plaintiff had in fact received Factor [VIII] while at Moses Taylor. Dr. Marcolini was present and observed Mr.

Viola's testimony. Dr. Marcolini acknowledged that her opinion about whether or not Plaintiff received Factor [VIII] at Moses Taylor was "completely opposite" to that of Mr. Viola. In fact, Dr. Marcolini could not say whether she was correct or Mr. Viola was correct on the issue of whether Plaintiff received Factor [VIII] at Moses Taylor.

To be sure, the testimony presented by Plaintiff pointed out some inconsistencies in charting and recordkeeping which certainly, it could be argued, left something to be desired. At the end of the day, however, this case turned on the issue of whether Moses Taylor maintained a sufficient supply of Factor [VIII] and whether [Plaintiff] was administered Factor [VIII] prior to his transfer to Hershey Medical Center. Even Plaintiff's expert, Dr. Henry Rinder, testified that Plaintiff received Factor [VIII] at Moses Taylor and that it was a different brand of Factor [VIII] from Plaintiff's preferred brand. Thus, the lion's share of evidence presented by the Plaintiff and by the Defendants established that Plaintiff received Factor [VIII] from Moses Taylor while he was at Moses Taylor. In short, the jury did exactly what a jury should do. It considered **all** the evidence.

Trial Court Opinion, 10/13/21, at 24-28 (cleaned up, emphasis in original).

In arguing for reversal, Plaintiff points to the evidence that was favorable to his position and suggests that it was entitled to the greater weight. **See** Plaintiff's brief at 24-32. He does not explain how the trial court abused its discretion in reaching its conclusion that the jury's verdict was not conscience-shocking. As such, he has failed to establish his entitlement to relief from this Court on his weight claim. **See Kimble**, **supra** at 800 ("[A] party who failed to convince the trial judge that the verdict was against the weight of the evidence may obtain relief on appeal only if it shows that the trial court acted capriciously or palpably abused its discretion.").

With his remaining issues, Plaintiff challenges rulings of the trial court regarding the admissibility of expert testimony from several witnesses. We initially observe that "whether a witness has been properly qualified to give expert witness testimony is vested in the discretion of the trial court." *Frey v. Potorski*, 145 A.3d 1171, 1176 (Pa.Super. 2016) (cleaned up). "An abuse of discretion may not be found merely because an appellate court might have reached a different conclusion, but requires a manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support so as to be clearly erroneous." *E. Steel Constructors, Inc. v. Int'l Fid. Ins. Co.*, 282 A.3d 827, 844 (Pa.Super. 2022) (cleaned up). Further, "to constitute reversible error, an evidentiary ruling must not only be erroneous, but also harmful or prejudicial to the complaining party." *Id*. (cleaned up).

Plaintiff first assails the trial court's refusal to allow Dr. Marcolini to offer an opinion as to Defendants' corporate negligence.[2] We are unable to discern

_____

[2] "Corporate negligence is a doctrine under which the hospital is liable if it fails to uphold the proper standard of care owed the patient, which is to ensure the patient's safety and well-being while at the hospital." *Thompson v. Nason Hosp*., 591 A.2d 703, 707 (Pa. 1991). "This theory of liability creates a nondelegable duty which the hospital owes directly to a patient." *Id*. In order to prove a hospital's corporate negligence, a plaintiff must establish that: (1) the hospital deviated from the standard of care; (2) the hospital had actual or constructive notice of the conditions which caused the harm; and (3) the hospital's deviation was a substantial factor in bringing about the plaintiff's harm. *See Seels v. Tenet Health Sys. Hahnemann, LLC*, 167 A.3d 190, 205 (Pa.Super. 2017). "Unless a hospital's negligence is obvious, an expert witness is required to establish two of the three prongs: that the hospital
*(Footnote Continued Next Page)*

from Plaintiff's brief what type of corporate negligence he sought to allege,[3] or what opinions concerning corporate negligence that Dr. Marcolini, an accomplished emergency department doctor, sought to testify about but was precluded from offering. Plaintiff merely lists a portion of Dr. Marcolini's *curriculum vitae* and complains that, "[d]espite all of the above, and as outlined more fully in the trial transcript, Dr. Marcolini was precluded from giving an opinion on corporate negligence, recklessness, and other topics." Plaintiff's brief at 17.

Next, Plaintiff asserts that the trial court should have allowed Dr. Rinder, his hematologist expert, to opine that Moses Taylor recklessly deviated from the standard of care applicable to a hospital pharmacy. He maintains that Dr. Rinder was merely going to corroborate the opinion of Plaintiff's pharmacy expert, Dr. Viola, but "from a hematology perspective." *Id*. at 20.

_____

deviated from the standard of care and that the deviation was a substantial factor in bringing about the harm." *Id*.

[3] There are four general areas comprising a hospital's overall obligation to its patients:

> (1) a duty to use reasonable care in the maintenance of safe and adequate facilities and equipment; (2) a duty to select and retain only competent physicians; (3) a duty to oversee all persons who practice medicine within its walls as to patient care; and (4) a duty to formulate, adopt and enforce adequate rules and policies to ensure quality care for the patients.

*Thompson v. Nason Hosp*., 591 A.2d 703, 707 (Pa. 1991) (cleaned up).

- 11 -

Finally, Plaintiff argues that the trial court committed reversible error based upon the trial court limiting the testimony of Dr. David Stewart, the surgeon who operated on Plaintiff at Hershey. Specifically, Plaintiff contends that Dr. Stewart, who was offered by Plaintiff both as a fact witness and as an expert in colorectal surgery, was erroneously precluded from testifying as to Plaintiff's hearsay statement that a hematologist at Hershey told him that Moses Taylor mismanaged his Factor VIII levels. Also, Plaintiff asserts that Dr. Stewart should have been permitted to offer an opinion as to the permanency of Plaintiff's condition and future medical expenses, as well as to Plaintiff's economic damages. *Id*. at 21.

Following a review of the trial court's opinion, the parties' briefs, and the pertinent portions of the certified record, we are unconvinced that the trial court abused its discretion in making its evidentiary rulings. *See* Trial Court Opinion, 10/13/21, at 12-14 (explaining that Dr. Marcolini's experience in the emergency department did not qualify her as an expert on the corporate standard of care for hospitals and that she failed to establish a basis for her contention that the Moses Taylor emergency physicians acted recklessly in this case); *id*. at 14-18 (indicating that Dr. Rinder's experience as a hematologist did not qualify him to opine about the standard of care for pharmacists, and that Dr. Rinder in his report did not "ever express what the applicable standard of care is," but "merely opine[d] that the actions of the Defendants deviated from whatever it is" (emphasis omitted)); *id*. at 19-22

(explaining the exclusion of inadmissible hearsay and Dr. Stewart's lack of qualifications as a colorectal surgeon to opine about the standard of care for hematologists or the extent of Plaintiff's economic damages).

Moreover, as Dr. Heim aptly observes, even if the trial court did improperly exclude one or all of the experts' proffered opinions, "it likely would not have made any difference in the jury's verdict[.]" Dr. Heim's brief at 13. It is plain that Plaintiff's whole case rested upon the foundation that Moses Taylor either did not have, or believed that it lacked, a supply of Factor VIII to administer to Plaintiff when he presented to the emergency department two days after the surgery, and that this failure to adequately prepare for the possibility that Plaintiff might need it following his hemorrhoidectomy was a deviation from the standard of care.

However, the documentary evidence and the testimony of the fact and expert witnesses, offered both by Defendants and by Plaintiff, undercut Plaintiff's foundational premise. First, the plan all along had been for Plaintiff to maintain the necessary pre- and post-surgery supply of Factor VIII product at his home because he was having out-patient surgery. *See* N.T. Trial, 6/23/21, at 74-75 (Dr. Bannon). With an outpatient pharmacy having supplied the week-long supply of the product, Moses Taylor did not require more than its usual emergency supply in order to be adequately prepared for Plaintiff's procedure. *Id*. at 107-09 (Dr. Bannon). *See also* N.T. Trial, 6/28/21, at 46-47 (Moses Taylor's pharmacist indicating that Dr. Heim's pre-

operation order indicated that Plaintiff would use his own supply of Factor VIII product so the hospital "would not have to go get anything").

Second, Moses Taylor had a more-then-adequate supply of Factor VIII product to administer to Plaintiff when he presented to the emergency department two days later after experiencing a common complication of the surgery for all patients, namely, bleeding from the surgical site. *See* N.T. Trial, 6/23/21, at 119 (Dr. Bannon); N.T. Trial, 6/25/21, at 173 (Dr. Stephen Ferzoco, Defendants' general surgeon expert). Even Plaintiff's experts Mr. Viola and Dr. Rinder acknowledged that Moses Taylor had over 6,000 units of Helixate in the pharmacy on June 8, 2013, and administered 4,000 units of it to Plaintiff before he left for Hershey. *See* N.T. Trial, 6/23/21, at 92 (Mr. Viola); N.T. Trial, 6/28/21, at 76-77 (Dr. Rinder). While Plaintiff attempted to argue that Moses Taylor's records concerning the presence and administration of the Factor VIII product may have been invalid, the fact that Plaintiff's Factor VIII level increased from 135 percent in his last test at Moses Taylor to 282 percent in the first test at Hershey confirms that he received an infusion at Moses Taylor.

Finally, the fact that Plaintiff continued to bleed from the surgical site for days despite his Factor VIII level being continually maintained at more than 100 percent eliminated a Factor VIII deficiency as the cause of his bleeding. *See* N.T. Trial, 6/25/21, at 171-74 (Dr. Ferzoco opining that "Factor VIII had no role in the bleed or the subsequent surgery at Hershey"); N.T.

Trial, 6/23/21, at 118-19 (Dr. Bannon indicating that, with Plaintiff's Factor VIII at 135 percent, "rather than an air ambulance, he needed a surgeon . . . because hemorrhoidal bleeding can occur or anal rectal bleeding can occur after hemorrhoidal surgery regardless if they are hemophiliac or not").

Since the evidence accepted by the jury overwhelmingly suggested that any faults in Moses Taylor's recordkeeping or resident supervision or internal communications did not cause Plaintiff to go without Factor VIII product, the excluded evidence from Drs. Marcolini and Rinder about those faults was not likely to have changed the verdict. Since the jury found no negligence on the part of Defendants and likely would have reached the same conclusion had they heard the additional opinions of Drs. Marcolini and Rinder, Dr. Stewart's opinions about Plaintiff's damages would never have been considered by the jury. Since the verdict was likely to be the same even if the trial court erroneously excluded the testimony of these witnesses, any arguable error did not rise to the level of reversible error. *See E. Steel Constructors*, *supra* at 844 ("[T]o constitute reversible error, an evidentiary ruling must not only be erroneous, but also harmful or prejudicial to the complaining party." (cleaned up)).

Therefore, because Plaintiff failed to establish that the trial court committed an error of law or abuse of discretion warranting relief from this Court, we affirm the judgment entered on the jury's defense verdict.

Judgment affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/23/2022