# Irvin v. Fierer

C.P. of Dauphin County, no. 413 S 2000.

*Robin J. Marzella,* for plaintiff.
*Sarah W. Arosell,* for defendants.

BEFORE: KLEINFELTER, LEWIS AND CHERRY, *JJ.*

LEWIS, *J.,* September 13, 2000—In this action, plaintiff seeks to hold liable a physician practice under the corporate negligence doctrine and requests that punitive damages be awarded. The facts of this case indicate that decedent Marie Brown had a medical history which included chronic asthma and chronic obstructive pulmonary disease. Plaintiff claims that Ms. Brown had been a patient of defendant Kandra Fierer & Kuskin Associates Ltd. for the rest of her health care needs. KFKA is an incorporated medical organization with an office in Harrisburg.

In the spring of 1999, when Ms. Brown had developed a continuous cough and after she had been evaluated by a specialist, Dr. Fierer of KFKA recommended that she undergo a colonoscopy and an esophagogastroduodenoscope (EGD) in order to assess her digestive tract. Dr. Fierer is a physician licensed to, and engaged in, the practice of internal and family medicine at KFKA. Plaintiff avers that at the time Ms. Brown was evaluated for her persistent cough at KFKA, she was at an increased risk of respiratory distress. However, plaintiff claims that defendants decided to continue with the scheduled procedures.

Ms. Brown was taken to KFKA for the EGD and colonoscopy on the morning of May 14, 1999. Plaintiff avers that the drug Versed was used as the anesthetic for the performance of the aforementioned procedures. Plaintiff maintains that Versed carries a high risk of pulmonary arrest in an already compromised patient. Plaintiff advises that this type of anesthesia has a strong central nervous system depressant effect which, if not properly monitored, can cause respiratory depression and ultimately respiratory failure. Plaintiff further asserts that during the procedures, the appropriate equipment and personnel to monitor Ms. Brown's heart and respiration was not employed because the medical records indicate that no one other than Dr. Fierer was present to oversee her vital signs.

Plaintiff claims that Dr. Fierer performed the EGD first and the colonoscopy second. Plaintiff additionally claims that it was not discovered until the conclusion of the procedures that Ms. Brown ceased breathing and had been without oxygen for a period of time. Plaintiff maintains that when it was first discovered that Ms. Brown was not breathing, she had neither a pulse nor a heartbeat. Attempts at resuscitation were initiated as Dr. Fierer administered CPR and an ambulance was summoned. Ms. Brown was transported to Community General Osteopathic Hospital where she was pronounced dead at 12:10 p.m. on May 14, 1999.

Plaintiff initiated this suit on behalf of the estate of Marie Brown against Dr. Fierer and against KFKA by filing a complaint on February 2, 2000. Thereafter, defendants filed preliminary objections as to plaintiff's claim for punitive damages and as to plaintiff's allega-

tions of corporate negligence against KFKA. Argument was held before a panel of this court on June 15, 2000. For the reasons set forth below, defendants' preliminary objections are denied.

We note that although defendants' preliminary objections have been characterized as motions to strike, their objections are actually in the nature of a demurrer. The standard for the disposition of a demurrer is well-settled.

"Since sustaining the demurrer results in a denial of the pleader's claim or dismissal of his suit, a preliminary objection in the nature of a demurrer should be sustained only in cases that clearly and without a doubt fail to state a claim for which relief may be granted . . . . If the facts as pleaded state a claim for which relief may be granted under any theory of law then there is sufficient doubt to require the preliminary objection in the nature of a demurrer to be rejected . . . ." *Willet v. Pa. Medical Catastrophe Loss Fund,* 549 Pa. 613, 619, 702 A.2d 850, 853 (1997).

## CORPORATE NEGLIGENCE

Recently, another panel of this court addressed the issue of corporate negligence in the case of *Dowhouer v. Judson,* 45 D.&C.4th 172 (Dauphin Cty. 2000). In that opinion filed on March 10, 2000, the panel analyzed the doctrine of corporate negligence and its application in this Commonwealth, beginning with the standard as set forth in the case of *Thompson v. Nason Hospital.*

"In *Thompson v. Nason Hospital,* 527 Pa. 330, 591 A.2d 703 (1991), the Pennsylvania Supreme Court, in establishing the doctrine of corporate negligence as it relates to hospital liability, identified four factors that a

plaintiff must establish to show that a hospital breached its duty. The factors are: (1) the hospital's duty to use reasonable cue in the maintenance of safe and adequate facilities and equipment; (2) the hospital's duty to select and retain only competent physicians; (3) the hospital's duty to oversee all persons who practice medicine within its walls as to patient care; and (4) the hospital's duty to formally adopt and enforce adequate rules and policies to ensure quality care for its patients. *Id.* at 339-40, 591 A.2d at 707. The *Thompson* court held that 'the corporate hospital's role in the total health care of its patients' required that hospitals be held to a standard of care separate and apart from the standard of care imposed upon physicians. *Id.* at 341, 591 A.2d at 708. The *Thompson* court also noted that for a hospital to be directly liable to a patient, the hospital must have actual or constructive knowledge of the defect or procedure that caused the harm. *Id.*" *Dowhouer,* 45 D.&C.4th at 178.

This court in *Dowhouer* refused to extend the corporate negligence doctrine to physician practices. We based our analysis on several cases, beginning with *Remshifski v. Kraus,* 1845 Civil 1992, Monroe County, September 8, 1995, the only published common pleas opinion prior to *Dowhouer* that tackled this issue. *Remshifski,* on a summary judgment motion, applied *Thompson* and declined to allow corporate negligence liability against entities other than hospitals.

We then reviewed the cases of *Milan v. American Vision Center,* 34 F. Supp.2d 279 (E.D. Pa. 1998), (holding that corporate negligence should not be extended to optometrists' offices), and *Shannon v. McNulty,* 718 A.2d 828 (Pa. Super. 1998), (finding that corporate liability

duties should "be applied to an HMO when that HMO is performing the same or similar functions as a hospital."). The opinions in both of these cases examined *Thompson* and discussed the entity's role in the total health care of its patients. Applying the rationales set forth in each of the above cases, this court in *Dowhouer* held that the plaintiff's claims did not impose a corporate negligence-type duty on the defendant physician practice, an entity devoted exclusively to the practice of cardiovascular surgery. Because this court did not find that the defendants' role in that action was to deliver total health care to its patients as intended under *Thompson,* we declined to extend the doctrine of corporate negligence to that kind of specialty practice. *Dowhouer,* 45 D.&C.4th at 180-81.

In the case sub judice, however, this court finds that a different result is warranted. The facts in the instant case are clearly distinguishable from the facts in *Dowhouer.* In *Dowhouer,* the plaintiff was attempting to hold a surgical center responsible for care she received while she was a patient in a hospital. However, in the current case, Ms. Brown was a patient of KFKA for most of her health care needs and was required to have surgical procedures performed based on the evaluation of one of KFKA's physicians. Ms. Brown was not admitted into a traditional hospital to undergo these surgical operations. Instead, Ms. Brown's EGD and colonoscopy were conducted at KFKA's offices.

Plaintiff effectively argues to this court that because the corporate entity KFKA made a conscious decision to expand its role as not just an office that practiced internal medicine but a facility that now provides many surgical and invasive procures, KFKA must be held ac-

countable for the negligent acts which take place during such operations. Plaintiff contends that because of this elective expansion, KFKA is responsible to assure the presence of appropriate equipment, monitoring devices and personnel as is required in a traditional hospital setting under the corporate negligence doctrine.

Further, this court notes that KFKA's authorization of the use of the supposedly dangerous drug Versed without the immediate availability of oxygen, the immediate availability of resuscitative drugs and equipment, the immediate availability of equipment for ventilation and intubation or the availability of equipment for the continuous monitoring of respiratory distress and skilled personnel for such monitoring are all courses of conduct which, as plaintiff's complaint alleges, may suggest corporate liability. At this early stage in the proceedings when discovery has not been completed and expert reports have not been produced, this court agrees. Therefore, this court will allow plaintiff to proceed with its corporate negligence claim against KFKA due to the significant control exercised by the corporation over Ms. Brown's total health care needs as alleged in plaintiff's complaint. (See *Fox v. Horn,* no. 98-5279, 2000 U.S. Dist. Lexis 432, E.D. Pa., January 21, 2000, which allowed a corporate liability claim against defendant Corrections Physicians Services Inc. to advance based on its contractual health care and treatment over inmates.)

## PUNITIVE DAMAGES

Next, defendants claim that plaintiff has not set forth sufficient factual allegations in her complaint to proceed with a claim for punitive damages. We disagree. The law

in Pennsylvania regarding punitive damages is that they are only available in extremely limited circumstances. The Pennsylvania Supreme Court has held that punitive damages may not be awarded for misconduct which constitutes ordinary negligence, such as inadvertence, mistakes or errors in judgment. *Martin v. Johns-Manville Corp.,* 508 Pa. 154, 170, 494 A.2d 1088, 1097 (1985); *McDaniel v. Merck, Sharp and Dohme,* 367 Pa. Super. 600, 623, 533 A.2d 436, 447 (1987), *appeal denied,* 520 Pa. 589, 551 A.2d 215 (1987). Since punitive damages are meant as a deterrent, they are only proper for outrageous conduct, done with bad motive or reckless indifference to the interest of others. *Martin,* 508 Pa. at 170, 494 A.2d at 1097. In determining whether punitive damages are appropriate, the defendant's state of mind is vital, and there must be an appreciation of the risk and the failure to act must be intentional, reckless or malicious. *Feld v. Merriam,* 506 Pa. 383, 395, 485 A.2d 742, 748 (1984).

Plaintiff Irvin, in the matter currently before this court, has made allegations, that, if proven, may constitute outrageous conduct and support a claim for punitive damages. With discovery not yet complete, it is far too early for this court to decide whether or not plaintiff may pursue her claim for punitive damages.

Accordingly the following is entered:

### ORDER

And now, September 13, 2000, it is hereby ordered that defendants' preliminary objections are denied.