**Pearl Mary POTTS, Administratrix of the Estate of Julie Ann Potts a/k/a Julie A. Potts, Deceased, Appellant**

v.

**STEP BY STEP, INC., Appellee.**

Superior Court of Pennsylvania.

Argued April 12, 2011.

Filed July 22, 2011.

Lawrence D. Finney, Philadelphia, for appellant.

Arthur W. Hankin, Philadelphia, for appellee.

BEFORE: PANELLA,* LAZARUS and OTT, JJ.

OPINION BY LAZARUS, J.:

Pearl Mary Potts ("Potts"), mother of Julie Ann Potts ("Julie"), deceased, and administratrix of her estate, appeals from the order entered in the Court of Common Pleas of Lackawanna County, granting Step By Step, Inc.'s ("Step By Step") motion for judgment on the pleadings. After careful review, we reverse and remand.

Julie, a non-ambulatory, non-verbal 21 year-old woman was afflicted with cerebral palsy, mental retardation and neuromuscular scoliosis. Due to her mental and physical conditions, she was a resident of a facility run by Step By Step, a private non-profit corporation that provides residence and 24-hour supervision for individuals with mental retardation and disabilities.

On February 18, 2008, Julie and another resident became ill. Potts requested that the staff contact a physician and, after such a call was made, a doctor prescribed Phenergen and Acetaminophen, although none was ever administered to Julie. Before Potts left her daughter that evening, she asked that the staff contact her if there was a change in Julie's condition.

That evening, Julie's condition became a concern to the staff as she vomited, became pale, weak and sweaty with a distended abdomen. As a result, two staff members at the residence, Ashley Davis and Michelle Spataro, contacted a licensed practical nurse ("LPN"), Holly Martin, who also worked for Step By Step. When Martin arrived, she found Julie weak and with an elevated respiratory rate. Before leaving the next morning, Martin instruct-

ed Davis and Spataro to watch both Julie and the other ill resident. Martin specifically told them to contact her immediately if Julie or the other resident vomited or had problems holding down fluids.

After Martin left that morning, Julie threw up a colored fluid. Despite Martin's instructions, neither Davis nor Spataro, the only staff members present at the time, contacted Martin to report Julie's vomiting. Davis and Spataro also failed to contact Potts, as she had requested, or call 9–1–1. As the morning progressed, Julie's condition worsened as she experienced trouble breathing. Marcy Tartella, another LPN, arrived at the facility and, after observing Julie's deterioration, contacted Martin to express her concern that Julie might require CPR. However, no staff member performed CPR and there was a delay in contacting 9–1–1. When an ambulance arrived, emergency workers found Julie pulseless and apneic, at which point they administered CPR.

When Julie arrived at the hospital she was septic, in cardiac arrest with peritonitis and in respiratory distress. Doctors diagnosed her as having a perforated gastric ulcer. She died later that day.

Potts filed a wrongful death suit against Step By Step on February 11, 2010 and Step By Step responded with an answer and new matter. On June 15, 2010, Step By Step moved for judgment on the pleadings, claiming Potts' complaint failed to state a cause of action per the immunity section of the Mental Health and Mental Retardation Act ("MHMRA"), 50 P.S. § 4603. Potts filed a brief in opposition to Step By Step's motion for judgment, and a supplemental brief. The Honorable Harold A. Thomson, Jr. ruled that Potts failed to plead or prove that Step By Step's actions constituted gross negligence

---

* Panella, J., did not participate in this decision.

or incompetence, as the MHMRA's immunity provision requires in a suit against a non-profit such as Step By Step. Therefore, Judge Thomson granted Step By Step's motion for judgment on the pleadings.

Potts filed a timely notice of appeal and Pa.R.A.P.1925(b) statement of matters complained of on appeal. Potts raises the following issues for our review:

1. Whether the facts and reasonable inferences in [Potts'] complaint set forth acts that could, upon further development of the facts and production of evidence, be found by a jury to constitute a cause of action within the immunity section of the [MHMRA]?

2. Whether the facts and reasonable inferences in [Potts'] complaint set forth acts that could, upon further development of the facts and production of evidence, be found by a jury to constitute gross negligence within the immunity section of the [MHMRA]?

3. Whether the facts and reasonable inferences in [Potts'] complaint set forth acts that could, upon further development of the facts and production of evidence, be found by a jury to constitute incompetence within the immunity section of the [MHMRA]?

4. Whether the immunity section of the [MHMRA] permits a cause of action on behalf of the estate of a mentally retarded person against the operator of a community residential home for the mentally retarded, where the operator acted without reasonable cause?

5. Whether the immunity section of the [MHMRA] covers the day-to-day care provided by the operator of a community residential home to a mentally retarded person?

6. To the extent Section 4603 of the [MHMRA] provides immunity for negligent conduct that injures a mentally retarded person, does Section 4603 discriminate against mentally retarded persons in violation of Title II of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12132?

7. To the extent Section 4603 of the [MHMRA] provides immunity for negligent conduct that injures a mentally retarded person, is said immunity section pre-empted by Title II of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12132?

Appellant's Brief, at 4–5.

 We first note that courts should only grant a motion for judgment on the pleadings when there are no disputed issues of fact and the moving party is entitled to judgment as a matter of law. *Miller v. Nelson*, 768 A.2d 858, 860 (Pa.Super.2001). The scope of our review on an appeal from the grant of a judgment on the pleadings is plenary. *Id.* We will only overturn the decision of the trial court if it was based on error or if the facts disclosed in the pleadings should go before the jury. *Id.* When performing our review, we are to accept all well-pleaded allegations as true. *Tucker v. Phila. Daily News*, 577 Pa. 598, 848 A.2d 113, 131 (2004). Further, we consider all material facts set forth in the complaint and all reasonably deducible inferences. *MacElree v. Phila. Newspapers, Inc.*, 544 Pa. 117, 674 A.2d 1050, 1054 (1996).

Here, the principal question on appeal concerns whether the facts Potts set out in her complaint could establish Step By Step's liability under Section 4603 of the MHMRA, and, therefore, whether the case should have gone before a jury. Potts also

questions the applicability and constitutionality of Section 4603. Therefore, we begin with the relevant immunity provision under the MHMRA:

> No person and no governmental or recognized nonprofit health or welfare organization or agency shall be held civilly or criminally liable for any diagnosis, opinion, report or any thing done pursuant to the provisions of this act if he acted in good faith and not falsely, corruptly, maliciously or without reasonable cause; provided, however, that causes of action based upon **gross negligence or incompetence** shall not be affected by the immunities granted by this section.

50 P.S. § 4603 (emphasis added). Stated simply, Section 4603 immunity is limited; agencies can be liable if they engage in gross negligence or incompetence.

■ Potts argues her complaint sufficiently pled facts that a jury could find constitute gross negligence or incompetence on the part of Step By Step employees. Potts is correct that, although her complaint only alleged Step By Step engaged in acts of negligence or carelessness, she need not have stated specifically that Step By Step's actions were gross negligence or incompetence. Instead, gross negligence and incompetence can be inferred from the allegations in a complaint. *See Bloom v. DuBois Reg'l Med. Ctr.*, 409 Pa.Super. 83, 597 A.2d 671, 677 (1991) (holding when assessing adequacy of complaint, crucial issue is whether pleaded facts could, upon further development and production of evidence, lead jury to reach necessary conclusions of law). Thus, we must assess if the facts in Potts' complaint could lead a jury to conclude there was gross negligence or incompetence.

**Gross Negligence**

■ Although the MHMRA does not define gross negligence, our Supreme Court has established a definition in relation to the immunity provision of the Mental Health Procedures Act ("MHPA"), 50 P.S. § 7114, a provision modeled after Section 4603.[1] In *Albright v. Abington Memorial Hosp.*, 548 Pa. 268, 696 A.2d 1159, 1164 (1997), the Court stated that gross negligence is "a form of negligence where the facts support substantially more than ordinary carelessness, inadvertence, laxity, or indifference. The behavior of the defendant must be flagrant, grossly deviating from the ordinary standard of care." *Id.* (citing *Bloom, supra*).

Here, while Potts argues the actions by Step By Step staff members qualify as gross negligence, Step By Step counters that its staff failed only to use their best judgment and report changes in Julie's condition, actions which do not rise to the level of gross negligence. *See Albright, supra* (holding where hospital failed to follow-up with patient after patient missed appointment, and failed to commit patient after husband described her deteriorating mental condition, hospital's exercise in judgment did not constitute gross negligence under MHPA); *Thompson v. Nason Hosp.*, 527 Pa. 330, 591 A.2d 703 (1991)

---

1. Section 7114 states: "In the absence of willful misconduct or gross negligence, a county administrator, a director of a facility, a physician, a peace officer or any other authorized person who participates in a decision that a person be examined or treated under this act, or that a person be discharged, or placed under partial hospitalization, outpatient care or leave of absence, or that the restraint upon such a person be otherwise reduced, or a county administrator or other authorized person who denies an application for voluntary treatment or for involuntary emergency examination and treatment, shall not be civilly or criminally liable for such decision or any of its consequences." 50 P.S. § 7114(a).

(concluding failure to recognize and report abnormalities in treatment and condition of patient constitutes negligence); *Downey v. Crozer–Chester Med. Ctr.,* 817 A.2d 517 (Pa.Super.2003) (holding medical center's actions did not rise to level of gross negligence under MHPA where it failed to supervise mentally ill patient while bathing, there were no prior signs bathing would be dangerous, and staff observed patient bathing approximately ten minutes before she was found unconscious).

Step By Step overlooks important distinctions between the cases it cites and this case. First, in *Thompson,* the Supreme Court did not consider the difference between negligence and gross negligence. Instead, the Court only needed to determine if material facts existed such that the hospital could be found negligent. *Thompson, supra,* at 709. Thus, it is problematic to rely on *Thompson* for the proposition that the acts in that case could not qualify as gross negligence.

In addition, this case is factually distinguishable from those cited by Step By Step. Here, Nurse Martin specifically instructed Spataro and Davis to contact her immediately if Julie vomited or had problems holding down fluids. Yet, when Julie vomited, neither Spataro nor Davis contacted Martin, immediately or otherwise; nor did either staff member administer CPR, or call 9–1–1 or Potts, as she had requested. During the delay in their action, Julie's condition worsened. In *Albright, Thompson* and *Downey,* no staff member failed to follow such a clear directive. Therefore, based on the facts Potts pled in her complaint, a jury could find Step By Step's actions constituted gross negligence, as they could be interpreted as "flagrant, grossly deviating from the ordinary standard of care." *Albright, supra.* Thus, Step By Step was not entitled to judgment as a matter of law and

the trial court erred by not allowing the facts of this case to go before a jury. *Miller, supra.*

## Incompetence

 Potts also argues the facts alleged in her complaint could support a claim for incompetence. As with gross negligence, the MHMRA does not define incompetence. However, unlike with gross negligence, our Supreme Court has not fashioned a definition in the MHPA or MHMRA context. When the Court addressed incompetence in the context of Section 4603, it was simply to note that a complaint needs allegations of gross negligence or incompetence. *See Freach v. Commonwealth,* 471 Pa. 558, 370 A.2d 1163 (1977), *overruled on other grounds,* (reversing order sustaining preliminary objections where complaint made allegation of gross negligence or incompetence). Nor has our Court articulated a definition to apply to Section 4603.

Even though Pennsylvania courts have never relied on incompetence alone to find a plaintiff overcame Section 4603 immunity, and despite the lack of a definition for incompetence, the plain language of Section 4603 makes clear that a cause of action for incompetence, independent of gross negligence, can overcome Section 4603 immunity. Indeed, we give the phrase "gross negligence or incompetence" its natural meaning: that *either* gross negligence *or* incompetence can create a cause of action.

Although incompetence can create an independent cause of action, the question remains as to what constitutes incompetence. Although Potts argues in her brief that incompetence is akin to ordinary negligence, we find her argument unavailing. In *Albright, supra,* our Supreme Court concluded that individuals and entities protected by the MHPA immunity provision are immune from liability for

claims of ordinary negligence. *Id.* at 1165. The Court specifically stated that requiring mental health employees and employers to defend jury trials where only ordinary negligence has been established "would gut the limited immunity provision . . . of any meaning and unfairly subject such employees and facilities to protracted and expensive litigation." *Id.* Although Section 4603 of the MHMRA includes incompetence, a term not present in the MHPA's immunity provision, we nevertheless find the Court's reasoning in *Albright* applicable: Section 4603's immunity provision would be stripped of meaning if purportedly protected individuals and facilities were forced to defend against claims that only involve ordinary negligence. Therefore, we decline to define incompetence as ordinary negligence.

Yet, we are still left with the question of how to define the term, "incompetence." Where there is no statutory definition, we look to a word's plain meaning. 1 Pa. C.S.A. § 1903. The American Heritage Dictionary defines "incompetence" as the "the quality or state of being incompetent." The American Heritage Dictionary of the English Language, 887 (4th ed.2000). "Incompetent" is defined as "[i]nadequate for or unsuited to a particular purpose or application" and "[d]evoid of those qualities requisite for effective conduct or action." *Id.*

Here, Step By Step staff members' failure to follow Nurse Martin's clear direction to call her if Julie vomited raises a legitimate question as to whether Step By Step staff was adequate to or suited for monitoring individuals with mental retardation. In addition, the fact that staff members were either unable or unwilling to administer CPR could show they were "devoid of those qualities requisite for effective conduct or action." Thus, again, the trial court erred by not allowing the facts to go before a jury. *Miller, supra.*[2]

### Protection of Day–To–Day Care Under Section 4603

■ Potts also alleges that the scope of Section 4603 immunity extends only to admission and discharge decisions, not day-to-day care and treatment. Thus, Potts reasons, since Step By Step's actions involved day-to-day care, it can be held liable under an ordinary negligence standard. However, Potts' argument is unavailing for many reasons. First, three of the cases she relies upon are not binding on this Court. Both *Saunders v. Latrobe Area Hosp., Inc.,* 14 Pa. D. & C.3d 458 (Pa. Arb.P.H.C.1980), and *Hanczar v. Trellis,* 14 Pa. D. & C.3d 466 (Pa.Ard.P.H.C.1980) are arbitration decisions rendered under

**2.** In her brief, Potts also argues that Section 4603 immunity is inapplicable if a protected agency does not act, as required by the statute, with "Reasonable Cause." Significantly, Potts likens this term to ordinary negligence. Where, as here, we have found Potts' claim can reach a jury under gross negligence or incompetence grounds, we decline to hazard an interpretation of the phrase "reasonable cause," one not defined in the statute and lacking a common definition. Indeed, Black's Law Dictionary only defines reasonable cause by referring the reader to the term "probable cause," one most commonly applied in the criminal law context. Black's Law Dictionary 1293 (8th ed.2004). Black's Law does include the following torts law definition of probable cause: "[a] reasonable belief in the existence of facts on which a claim is based and in the legal validity of the claim itself." *Id.* However, such a definition clearly does not offer insight into how reasonable cause might apply in the MHMRA context. Nor is there a readily applicable definition of reasonable cause in non-legal dictionaries. Without providing our own definition for reasonable cause, we note that in the context of Section 4603, reasonable cause does not equal ordinary negligence, since, as described above in our incompetence analysis, such a definition would strip the immunity provision of its meaning.

the auspices of an Arbitration Panel that our Supreme Court has subsequently held unconstitutional. *See Mattos v. Thompson*, 491 Pa. 385, 421 A.2d 190, 196 (1980). In addition, Potts cites the dissent from *Barren v. U.S.*, 839 F.2d 987 (3rd Cir. 1988), a minority writing that is certainly not binding.

Moreover, the binding cases Potts cites are not applicable. In *Willett v. Evergreen Homes, Inc.*, 407 Pa.Super. 141, 595 A.2d 164 (1991), this Court did not address the question of whether Section 4603 covered day-to-day care because the appellee in that case, an organization tasked with transferring and placing a mentally retarded patient in a residential facility, was not involved in day-to-day care. In *F.D.P. v. Ferrara*, 804 A.2d 1221 (Pa.Super.2002), the plaintiff sued a mental health facility when one of its residents sexually molested her. This Court reasoned that because the mental health facility did not participate in the decision to release the resident, a decision that ultimately led to the molestation, the health facility was not liable. *Id.* at 1233–34. Thus, as in *Willett*, the case did not involve day-to-day care.

However, where facilities have provided day-to-day care and treatment, courts have applied the immunity provisions of the MHMRA and MHPA. For example, in *Rhines v. Herzel*, 481 Pa. 165, 392 A.2d 298 (1978), a hospital faced litigation after it failed to adequately supervise a patient with homicidal tendencies. Our Supreme Court ultimately found the suit against the hospital could proceed under the MHMRA because the allegations in the plaintiff's complaint could allow a jury to find the hospital engaged in gross negligence. *Id.* at 300. In so doing, the Court made clear that ordinary negligence would not be sufficient for a claim against the hospital, even though the hospital's actions, supervising a dangerous mental patient, were

part of its day-to-day care. In addition, as described above in *Downey*, this Court applied the MHPA's immunity provision when a medical center failed to supervise a patient while she bathed. *Downey, supra.* Thus, the scope of Section 4603 immunity extends to day-to-day care and is not limited to decisions regarding admission or discharge. Therefore, despite Potts' argument, her claim against Step By Step may not proceed under an ordinary negligence standard.

### Constitutionality of Section 4603

As articulated above, Section 4603 protects entities such as Step By Step against ordinary negligence claims. However, Potts argues that if Section 4603 precludes liability under an ordinary negligence standard, the section violates Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C.A. § 12132, and is unconstitutional.

We first note that a party challenging the constitutionality of a Pennsylvania statute must give notice to the Attorney General. Pa.R.C.P. 235. Failure to provide such notice in a case where the Commonwealth is not a party results in waiver of the constitutional issues. *Adelphia Cablevision Assoc. of Radnor, L.P. v. Univ. City Hous. Co.*, 755 A.2d 703, 709 (Pa.Super.2000).

Although Potts failed to provide notice to the Attorney General, in her reply brief she cites Commonwealth Court opinions which hold Rule 235 notice is required only where the challenge is that a statute is unconstitutional on its face. *See Scalzi v. City of Altoona*, 111 Pa.Cmwlth. 479, 533 A.2d 1150 (1987); *County of Bucks v. Cogan*, 150 Pa.Cmwlth. 74; 615 A.2d 810 (1992). Potts maintains she is not making a facial challenge to Section 4603. We disagree.

██ Despite her characterization to the contrary, Potts' claim is a facial challenge to Section 4603. In her appellate brief, Potts states that if claims for ordinary negligence are disallowed, Section 4603 discriminates against mentally retarded persons in violation of the ADA. Although, in her reply brief, she now attempts to argue that she challenges the statute only as applied to Julie's situation, the clear implications of Potts' argument suggest otherwise. Since the mentally retarded are the *only* group covered under the MHMRA,[3] were we to find Section 4603 discriminated against Julie because she is mentally retarded, we would be saying more broadly that the section discriminates against all those who are mentally retarded. Thus, we would be finding the section facially invalid. Therefore, Potts' challenge is properly described as a facial challenge to Section 4603 and since she failed to provide notice to the Attorney General's office her constitutional claims are waived. Pa.R.C.P. 235; *Adelphia, supra.*[4]

In summation, in addition to finding Potts waived her constitutional claim, we reject her argument that an ordinary negligence standard applies in the Section 4603 context, and her argument that Section 4603 immunity does not apply to day-to-day care and treatment. Nevertheless, we reverse and remand because based upon Potts' allegations in her complaint, a jury could find Step By Step's actions constituted gross negligence or incompetence.

Order reversed. Case remanded with instructions. Jurisdiction relinquished.

---

3. Although when passed in 1966, the MHMRA covered mental disabilities that included mental retardation and a variety of other disabilities, the MHMRA's scope changed after the passage of the MHPA. The MHPA repealed the MHMRA's definition of mental disability "except in so far as they relate to mental retardation or to persons who are mentally retarded." 50 P.S. § 7502.

4. Even if we did not find Potts' constitutional claim waived, her argument is unavailing. First, in *Allen v. Montgomery Hosp.*, 548 Pa. 299, 696 A.2d 1175 (1997), our Supreme Court held that the MHPA's immunity provision, Section 7114, which is modeled on Section 4603 of the MHMRA, does not violate the Equal Protection Clause of the United States Constitution's 14th Amendment. In so concluding, the Court held that restricting the right to sue in Section 7114 bears a reasonable relation to the government's interest in ensuring organizations provide care to the mentally ill. *Allen*, 696 A.2d at 1179 n. 7. The same reasoning applies to the restriction in Section 4603.

In addition, Potts misinterprets the law when arguing that a public entity, which is prohibited under the ADA from discriminating against individuals with disabilities, is involved in this case. Potts admits that Step By Step cannot be considered a public entity, but she relies on *Shelley v. Kraemer*, 334 U.S. 1, 68 S.Ct. 836, 92 L.Ed. 1161 (1948), for the proposition that when a court decides the constitutionality of a statute, a public entity is involved because the state is considered to have participated in the enforcement of that statute. However, the United States Supreme Court has stated that "[a]ny argument driven to reliance upon an extension of [*Shelley*] is obviously in serious trouble." *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 266 n. 14, 113 S.Ct. 753, 122 L.Ed.2d 34 (1993). The 11th Circuit Court of Appeals has stated that the Supreme Court placed minimal reliance on *Shelley* and is reluctant to extend its holding beyond the context of racial discrimination. *Davis v. Prudential Securities*, 59 F.3d 1186, 1191 (11th Cir.2005). Therefore, based on *Shelley's* limited applicability, Potts fails to show, as required by the ADA, the involvement of a public entity.