J-A10022-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| BENJAMIN ARTHUR PINK, BY JOYCE SMITH, HIS ATTORNEY-IN-FACT, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| UPMC PRESBYTERIAN SHADYSIDE, T/D/B/A WESTERN PSYCHIATRIC INSTITUTE AND CLINIC, | |
| Appellee | No. 752 WDA 2015 |

Appeal from the Order Entered April 13, 2015
In the Court of Common Pleas of Allegheny County
Civil Division at No(s): NP. GD12-020560

| | |
|---|---|
| BENJAMIN ARTHUR PINK, BY JOYCE SMITH, HIS ATTORNEY-IN-FACT, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| UPMC PRESBYTERIAN SHADYSIDE, T/D/B/A WESTERN PSYCHIATRIC INSTITUTE AND CLINIC, | |
| Appellee | No. 753 WDA 2015 |

Appeal from the Order Entered April 27, 2015
In the Court of Common Pleas of Allegheny County
Civil Division at No(s): GD12-020560

BEFORE:  GANTMAN, P.J., BENDER, P.J.E., and PANELLA, J.

MEMORANDUM BY BENDER, P.J.E.:                    **FILED JULY 14, 2016**

Appellant, Benjamin Arthur Pink, by Joyce Smith, his attorney-in-fact,

appeals from the order granting summary judgment in favor of Appellee,

UPMC Presbyterian Shadyside t/d/b/a Western Psychiatric Institute and Clinic.[1]  After careful review, we affirm.

Appellant has been diagnosed with autism, mental retardation, and impulse disorder.  Appellant's Brief at 7*.*  In 2009, Appellant moved into a group home "because he wanted to go and live independently or co-dependently…."  N.T. Deposition of Joyce Smith, 9/24/14, at 13.  On August 24, 2010, he was involuntarily committed to Western Psychiatric Institute and Clinic (WPIC) under Section 7302 of the Mental Health Procedures Act of 1976, 50 P.S.  §§ 7101-7503, (MHPA), for aggressive behavior and destruction of property.  ***Id.***

As summarized by the trial court in its opinion:

The "known" facts in this case are substantially undisputed. [Appellant] alleges that he suffered two injuries while admitted as an in-patient at [WPIC].  On or about October 26, 2010, [Appellant] suffered an injury of unknown cause resulting in a non-displaced or incomplete fracture of the left patella as well as an injury to his left foot.  On the afternoon of October 28, 2010, less than two days after the first fall, [Appellant] fell on his left arm, fracturing his elbow.  [Appellant] is not competent to testify as to the cause of his own injuries, there are no witnesses to the circumstances that caused [Appellant's] injuries, and no facts or

_____

[1] We note that Appellant has also erroneously appealed from the order denying his motion for reconsideration.  He then filed with this Court an Application for Consolidation, which we granted by *per curiam* order on June 8, 2015.  It is well-settled that "the refusal of a trial court to reconsider, rehear, or permit reargument of a final decree is not reviewable on appeal." ***Provident National Bank v. Rooklin***, 378 A.2d 893, 897 (Pa. Super. 1977).  Accordingly, we will address only the appeal from the order granting summary judgment.

records substantiating what negligent conduct, if any, by or on behalf of [Appellee] contributed to [Appellant's] injuries.

Trial Court Opinion (TCO), 5/22/15, at 1-2 (unpaginated) (citations to record omitted).

Appellant instituted the underlying action on October 25, 2012, by Writ of Summons. On January 10, 2013, Appellant filed a complaint and certificate of merit, in which he alleged negligence on the part of Appellee and sought damages for the alleged injuries he sustained while admitted as an in-patient at WPIC. Appellant's Brief at 7. Appellee filed preliminary objections, followed by an answer and new matter, asserting immunity based on the MHPA. After a period of discovery, a jury trial was scheduled for March 13, 2015. On March 6, 2015, Appellee filed a motion for summary judgment, which was granted by the trial court on April 13, 2015. Appellant timely filed a motion for reconsideration. The trial court denied Appellant's motion on April 27, 2015, and on May 11, 2015, he filed a notice of appeal.

Herein, Appellant raises the following issues for our review:

I.   Whether the lower court erred in granting [Appellee's] motion for summary judgment and denying the motion for reconsideration where there were sufficient facts developed in the record which would allow a jury to find that [Appellee's] psychiatric institution acted with gross negligence or willful misconduct in the care and treatment provided to [] Appellant resulting in his injuries and damages?

II.  Whether the report of Appellant's expert witness sets forth within medical certainty a prima facie cause of action against [Appellee] for gross negligence?

III. Whether the lower court erred in granting summary judgment and denying Appellant's motion for

- 3 -

reconsideration where a jury based upon the evidence and the report of Appellant's expert could find that the actions of [Appellee] caused the harm suffered by Appellant in accordance with ***Hamil v. Bashline***, 392 A.2d 1280, 481 Pa. 256 (Pa. 1978)?

IV. Whether the lower court erred in denying Appellant's motion for reconsideration of summary judgment where evidence available subsequent to the argument on [Appellee's] motion showed that [Appellee's] policy and practice of destroying staff notes concerning what happened over each twenty-four hour period effectively destroyed evidence that [] Appellant could have used to reconstruct the incident and its causation which should have entitled [] Appellant to an adverse inference instruction to the jury?

Appellant's Brief at 5-6 (unnecessary capitalization omitted).

Our standard of review with respect to a trial court's decision to grant or deny a motion for summary judgment is well-settled:

A reviewing court may disturb the order of the trial court only where it is established that the court committed an error of law or abused its discretion. As with all questions of law, our review is plenary.

In evaluating the trial court's decision to enter summary judgment, we focus on the legal standard articulated in the summary judgment rule. Pa.R.C.P. 1035.2. The rule states that where there is no genuine issue of material fact and the moving party is entitled to relief as a matter of law, summary judgment may be entered. Where the non-moving party bears the burden of proof on an issue, he may not merely rely on his pleadings or answers in order to survive summary judgment. Failure of a non-moving party to adduce sufficient evidence on an issue essential to his case and on which it bears the burden of proof establishes the entitlement of the moving party to judgment as a matter of law. Lastly, we will view the record in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party.

*Thompson v. Ginkel*, 95 A.3d 900, 904 (Pa. Super. 2014) (citations omitted).

Preliminarily, we note that the MHPA provides limited protection from civil and criminal liability to mental health personnel and their employees in rendering treatment. *Farago v. Sacred Heart General Hospital*, 562 A.2d 300, 304 (Pa. 1989). Specifically, Section 7114 provides immunity as follows:

(a)    In the absence of willful misconduct or gross negligence, a county administrator, a director of a facility, a physician, a peace officer or any other authorized person who participates in a decision that a person be examined or treated under this act, or that a person be discharged, or placed under partial hospitalization, outpatient care or leave of absence, or that the restraint upon such person be otherwise reduced, or a county administrator or other authorized person who denies an application for voluntary treatment or for involuntary emergency examination and treatment, shall not be civilly or criminally liable for such decision or for any of its consequences.

50 Pa.C.S. § 7114(a).

Our Supreme Court has determined that the immunity provided by the MHPA extends to institutions, as well as natural persons, that provide care to mentally ill patients. *Farago* …, 562 A.2d [at] 303 []. Additionally, our Supreme Court has interpreted § 7114(a) to include not only treatment decisions, but also, "'care and other services that supplement treatment' in order to promote the recovery of the patient from mental illness." *Allen v. Montgomery Hospital*, 548 Pa. 299, 696 A.2d 1175, 1179 (1997).

*Downey v. Crozer-Chester Medical Center*, 817 A.2d 517, 525 (Pa. Super. 2003). As a hospital that provides psychiatric care, we conclude that the MHPA most certainly applies to Appellee in this case. "Simply stated,

Appellant must prove willful misconduct or gross negligence to throw off the blanket of limited immunity which protects [Appellee]....” **Albright v. Abington Memorial Hosp.**, 696 A.2d 1159, 1164 (Pa. 1997).

Here, Appellant does not dispute the protection provided to Appellee by the MHPA, but rather asserts that the trial court erred in finding, as a matter of law, that Appellant failed to establish gross negligence or willful misconduct. Appellant's Brief at 9. In **Bloom v. Dubois Regional Medical Center**, 597 A.2d 671 (Pa. Super. 1978), this Court arrived at a definition of gross negligence for purposes of the MHPA. This definition was later adopted by our Supreme Court in **Albright**:

> It appears that the legislature intended to require that liability be premised on facts indicating more egregiously deviant conduct than ordinary carelessness, inadvertence, laxity, or indifference. We hold that the legislature intended the term gross negligence to mean a form of negligence where the facts support substantially more than ordinary carelessness, inadvertence, laxity, or indifference. The behavior of the defendant must be flagrant, grossly deviating from the ordinary standard of care.

**Albright**, 696 A.2d at 1164 (quoting **Bloom**, 597 A.2d at 679). "Willful misconduct is conduct of such a nature that the actor desired to bring about the result that followed or at least was aware that it was substantially certain to follow." **Dudley v. USC Corp.**, 606 A.2d 916, 921-922 (Pa. Super. 1992).

In the present case, Appellant avers that the evidence establishes gross negligence on the part of Appellee for: 1) failing to protect Appellant; 2) inflicting suffering on Appellant through delay in treatment; and 3) failing

to supervise Appellant following his knee injury. Appellant's Brief at 12-19. Appellant further avers that this matter should have been "determined by a jury and not as a matter of law." *Id.* at 12.

First, we note that we addressed the very issue of whether the jury has the sole right to determine gross negligence in *Downey*:

> While it is generally true that the issue of whether a given set of facts satisfies the definition of gross negligence is a question of fact to be determined by a jury, a court may take the issue from a jury, and decide the issue as a matter of law, if the conduct in question falls short of gross negligence, the case is entirely free from doubt, and no reasonable jury could find gross negligence.
> …
> To require mental health employees and their employers to defend jury trials on the issue of gross negligence where the trial judge finds as a matter of law that, at best, only ordinary negligence has been established, would gut the limited immunity provision of the Act of any meaning and unfairly subject such employees and facilities to protracted and expensive litigation.

*Downey*, 817 A.2d at 525-526 (quoting *Albright*, 696 A.2d at 1164-65). In our review of the trial court's conclusion that no reasonable jury could find gross negligence based on the evidence presented, we remain mindful that Appellee's behavior must be determined to be flagrant and grossly deviating from the ordinary standard of care. *See Downey*, 817 A.2d at 526.

Appellant asserts that during his course of stay at WPIC, he was involved in numerous altercations with other patients and that Appellee did nothing to protect him. Appellant's Brief at 13. However, Appellant acknowledges that Appellee transferred an abusive roommate to another

room. Moreover, as we gleaned from the parties' briefs and our review of the record, Appellant had an individualized treatment plan, was regularly monitored, and was examined daily by Dr. Russell M. Farr ("Dr. Farr"), the staff psychiatrist. He participated in group activities, which took place in an activity room with staff present, and spent time in the common lounge area located in front of the nurse's station.

Appellant further claims that Appellee was grossly negligent in delaying treatment of his knee and by failing to supervise him following his injury. Appellant's Brief at 17-18. More specifically, Appellant states that he was seen by Lori Lapina, P.A., at 3:00 p.m. on October, 26, 2010 for his knee injury. Appellant asserts that because of his limited mental capacity and verbal communication skills, he was unable to explain what happened. "He could only say that his knee 'hurts a lot' and he had difficulty walking. The P.A. noted an unsteady gait, unlike in the morning, and found swelling with a loss of bony landmarks in the left knee with bruising and warmth in the area of the knee. An x-ray of the knee was ordered at the same time which was approved by Dr. Farr." *Id.* at 14. Appellant baldly asserts that after injuring his knee, Appellee made no provisions for his comfort and safety and concludes that Appellee's "failure to assess and provide proper supervision of [Appellant] and others led to the injuries which began on October 26th." *Id.* at 16.

The record belies Appellant's assertion that Appellee was grossly negligent in delaying treatment of his knee. It is uncontradicted that

Appellant was examined at 3:00 p.m. on the date of the alleged incident. An x-ray was ordered during said examination and was then conducted at 8:28 p.m. that same night. Dr. Farr, examined Appellant the next morning at approximately 8:30 a.m. At 12:20 p.m. on October 27, 2010, a consultation with orthopedics was ordered. Later that same day, orthopedics casted Appellant's leg. As to the care of Appellant following his knee injury, we gleaned from the record that Appellant was using a walker and that the nursing staff encouraged Appellant to remain off his feet and placed him on "level 2" fall precautions, which is Appellee's highest level of fall precaution. Appellant was clearly not "ignored" after his injury.

As delineated by the definition set forth above, gross negligence refers to conduct that goes well beyond ordinary negligence, carelessness, inadvertence, laxity or indifference. Here, Appellant has failed to establish any facts whatsoever to support his allegations that Appellee acted in a flagrant manner and grossly deviated from the standard of care. Thus, we conclude that Appellant's claims in this regard are meritless.

In further support of our conclusion that the facts in the present case do not substantiate a finding of gross negligence, we look to this Court's decision in ***Downey***. There, a mentally ill patient was admitted to a medical center where it was determined that she required supervision of her daily living activities, including bathing. ***Downey***, 817 A.2d at 522. The medical center was sued by the patient's estate after she drowned as a result of the center's failure to directly supervise her while she was bathing. ***Id.*** This

Court held that "the alleged failure to supervise the decedent while bathing constituted nothing more than ordinary 'carelessness, inadvertence, laxity or indifference.'" *Id.* at 526. In examining the record, the *Downey* Court noted that at no point did the expert report state what standard of care or procedures or policies were ignored or violated by the staff. *Id.* Moreover, a thorough review of the record led us to conclude that: "[T]he Decedent's death, while unfortunate, was accidental. There was no indication of gross negligence … *[a]t most*, their failure to supervise Downey for the entire period of bathing constituted ordinary carelessness, inadvertence, laxity or indifference which fails to give rise to a cause of action under the MHPA." *Id.* at 527 (emphasis added).

Here, Appellant has failed to establish *ordinary* negligence,[2] let alone gross negligence, as he does not show any causal connection between Appellee's actions and his injuries. Based on our decision in *Downey*, even if Appellant were able to prove that his injuries were a direct result of Appellee's failure to properly supervise him, that would at most give rise to a finding of ordinary negligence. *See also Albright*, 696 A.2d at 1159 (applying immunity under the MHPA and holding that there was no gross negligence on the part of the hospital where a patient receiving outpatient

_____

[2] "Negligence is established by proving the following four elements: (1) a duty or obligation recognized by law; (2) a breach of that duty; (3) a causal connection between the conduct and the resulting injury; and (4) actual damages." *Grossman v. Barke*, 868 A.2d 561, 566 (Pa. Super. 2005).

care set fire to her home as a result of her mental health issues, and the hospital was aware, prior to the incident, that the patient had not been taking her medication, had missed her recent appointments, and that her mental condition was deteriorating, but failed to have the patient committed); *Farago*, 562 A.2d at 300 (affirming a finding that the MHPA immunity applied and holding that plaintiff failed to establish gross negligence where plaintiff claimed that she was sexually assaulted by another patient as a result of the hospital's failure to adequately supervise and protect her).

While it is unfortunate that Appellant sustained the two injuries described herein, he has failed to establish any facts whatsoever to support his allegations that his injuries were caused by a flagrant and gross deviation from the standard of care. Accordingly, we discern no abuse of discretion in the trial court's finding that Appellant has failed to establish gross negligence.

Next, Appellant falsely equates corporate negligence with gross negligence and asserts a claim of corporate negligence against Appellee for its alleged lack of care for Appellant while residing as an in-patient in its facility. Appellant's Brief at 19. "Corporate negligence is a doctrine under which the hospital is liable if it fails to uphold the proper standard of care owed the patient, which is to ensure the patient's safety and well-being while at the hospital." *Thompson v. Nason Hospital*, 591 A.2d 703, 707 (Pa. 1991). The *Thompson* Court adopted the doctrine of corporate

negligence as a theory of hospital liability and noted "that for a hospital to be charged with negligence, it is necessary to show that the hospital had actual or constructive knowledge of the defect of procedures which created the harm." *Id.* at 708. "Furthermore, the hospital's negligence must have been a substantial factor in bringing about the harm to the injured party." *Id.*

Appellant relies on the expert testimony of James R. Merikangas, M.D., a renowned psychiatrist, in support of his claim of corporate negligence.[3] Appellant argues that the expert report of Dr. Merikangas is sufficient to support a *prima facie* case for gross negligence, as it establishes that Appellee violated three of the corporate duties as set forth in the **Thompson** case. Appellant's Brief at 21. However, we previously acknowledged an important distinction between **Thompson** and the present case. "In **Thompson**, the Supreme Court did not consider the difference between negligence and gross negligence. Instead, the Court only needed to determine if material facts existed such that the hospital could be found negligent." **Potts v. Step By Step, Inc.**, 26 A.3d 1115, 1120 (Pa. Super. 2011). Thus, we concluded "it is problematic to rely on **Thompson** for the proposition that the acts in that case could not qualify as gross negligence." **Id.** In light of our conclusion herein that absent the finding of gross

_____

[3] **See** Expert Report of James R. Merikangas, M.D., attached as Exhibit "D" to Appellee's Motion for Summary Judgment.

negligence, Appellee is subject to the immunity provided under the MHPA, we deem Appellant's reliance on **Thompson** misguided and this issue without merit.

In his third issue, Appellant avers that the trial court erred in granting summary judgment and denying his motion for reconsideration where a jury, based on the evidence of record and the expert report of Dr. Merikangas, could have found that the actions of Appellee caused the harm Appellant suffered. Appellant's Brief at 21. Appellant mistakenly applies Section 323(a) of the Restatement (Second) of Torts[4] and alleges that Appellee is liable under this section for the damages suffered by Appellant. Appellant further argues that the Supreme Court's decision in **Hamil v. Bashline**, 392 A.2d 1280 (Pa. 1978) is controlling in this case. Again, Appellant fails to take into account that Appellee is protected by immunity

_____

[4] Section 323 provides:

> § 323. Negligent Performance of Undertaking to Render Services.
>
> One who undertakes, gratuitously or for consideration to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if
>
> (a)  his failure to exercise care increases the risk of harm, or
>
> (b)  the harm is suffered because of the other's reliance upon the undertaking.

Restatement (Second) of Torts § 323 (1965).

under the MHPA and, thus, cannot be held liable absent a finding of gross negligence. Section 323(a) and the decision in **Hamil** are based merely on a finding of ordinary negligence. Hence, this claim is also without merit.

Moreover, we note:

It is well settled in the law that except in rare situations … the mere occurrence of an injury does not prove negligence and that an admittedly negligent act does not necessarily entail liability; rather even when it is established that the defendant breached some duty of care owed the plaintiff, it is incumbent on a plaintiff to establish a causal connection between defendant's conduct and the plaintiff's injury. Stated another way, the defendant's conduct must be shown to have been the proximate cause of plaintiff's injury. Proximate cause is a term of art denoting the point at which legal responsibility attaches for the harm to another arising out of some act of defendant; and it may be established by evidence that the defendant's negligent act or failure to act was a substantial factor in bringing about the plaintiff's harm. The defendant's negligent conduct may not, however, be found to be a substantial cause where the plaintiff's injury would have been sustained even in the absence of the actor's negligence.

**Hamil**, 392 A.2d at 1284 (citations omitted). After careful review, we agree with the trial court's finding that Appellant has failed to produce sufficient facts to establish any causal connection whatsoever between Appellee's actions and Appellant's injuries.

It is Appellant's burden to establish causation through expert testimony:

Normally a plaintiff may establish his case of causation with any evidence, direct or circumstantial, which tends to show defendant's actions as the legal cause of his harm. Where, however, the ultimate determinations lie beyond the knowledge or expertise of the average layperson, expert testimony is permitted (and sometimes required) to aid the jury in its

understanding of the factors involved and the teaching of the pertinent discipline with respect thereto. … [I]t is generally acknowledged that the complexities of the human body place questions as to the cause of pain or injury beyond the knowledge of the average layperson.  For a plaintiff to make out his cause of action in such a case, therefore, the law requires that expert medical testimony be employed.  In addition to its bearing on whether or not the defendant's conduct was negligent, such testimony is needed to establish that the injury in question did, with a reasonable degree of medical certainty, stem from the negligent act alleged.

*Id.* at 1285.  The law provides that:

[E]xpert testimony is incompetent if it lacks an adequate basis in fact.  While an expert's opinion need not be based on absolute certainty, an opinion based on mere possibilities is not competent evidence.  This means that expert testimony cannot be based solely upon conjecture or surmise.  Rather, an expert's assumptions must be based upon such facts as the jury would be warranted in finding from the evidence.

***Gillingham v. Consol Energy, Inc.***, 51 A.3d 841, 849 (Pa. Super. 2012).

Appellant produced only the expert testimony of Dr. Merikangas.  In his report, Dr. Merikangas summarized Appellant's treatment plan and the facts set forth herein regarding Appellant's two injuries.  Dr. Merikangas concluded his report by opining that "[a]s a result of negligence and a reckless disregard for his safety [Appellant] suffered not one, but two falls resulting in injury, resulting in his condition and prospects to be substantially worse as a result o[f] his hospitalization at WPIC."[5]  However, Dr. Merikangas failed to explain how Appellant fell, nor did he provide any

_____

[5] Expert Report of Dr. Merikangas, attached as Exhibit "D" to Appellee's Motion for Summary Judgment, at 3.

factual support for his conclusion that Appellee's actions caused the injuries. Thus, this expert report contained mere conjecture and failed to meet Appellant's burden of proof.

Finally, Appellant claims that Appellee's policy and practice of destroying staff notes concerning what happened over each twenty-four hour period effectively destroyed evidence that Appellant could have used to reconstruct each incident and its causation; thus, he was entitled to an adverse inference instruction to the jury. Appellant's Brief at 24. In response, the trial court opined:

> [Appellant's] reliance upon these missing notes does not support an adverse inference charge. There is no additional record evidence regarding the nature of the notes, how they are historically maintained, how they could have been properly maintained, or how they might have been improperly disposed of or destroyed in this case. There is nothing in the testimony available in this case to support a suggestion that [Appellee], in any way, uncharacteristically, improperly, or intentionally handled or destroyed these notes. Of course, because they are not available, we are without the benefit of [knowing] what information is provided in the specific notes; but, more importantly, the record does not reflect what type of information is generically provided in these notes so as to permit even a reasoned guess as to whether they might, or might not, be meaningfully expected to speak to the question of whether [Appellee] engaged in gross negligence and/or whether [Appellee's] conduct in any way caused or contributed to [Appellant's] injury.

TCO at 3 (unpaginated). We discern no abuse of discretion by the trial court. Moreover, we note that the record includes daily Progress Notes

signed by Dr. Farr, which appear to include a summary of the staff's daily notes regarding Appellant's care and behavior.[6]

As Appellant failed to establish a genuine issue of material fact, we conclude that the trial court did not commit an error of law or abuse its discretion when it granted Appellee's motion for summary judgment.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date:  7/14/2016

_____

[6] See Progress Notes, attached as Exhibit "A" to Appellee's Motion for Summary Judgment.