J-S11017-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| KATHRYN J. WUNDERLY, EXECUTRIX OF THE ESTATE OF KENNETH E. WUNDERLY, DECEASED | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | No. 2796 EDA 2022 |
| SAINT LUKE'S HOSPITAL OF BETHLEHEM, PENNSYLVANIA D/B/A ST. LUKE'S HOSPITAL - SACRED HEART CAMPUS AND ST. LUKE'S HEALTH NETWORK, INC. D/B/A ST. LUKE'S UNIVERSITY HEALTH NETWORK AND ABOVE AND BEYOND INCORPORATED D/B/A ABOVE & BEYOND MOUNTAIN VIEW | : | |

Appeal from the Order Entered October 14, 2022
In the Court of Common Pleas of Lehigh County Civil Division at No(s):
2021-C-1562

BEFORE: OLSON, J., McLAUGHLIN, J., and KING, J.

MEMORANDUM BY McLAUGHLIN, J.:                    **FILED JUNE 14, 2023**

Kathryn J. Wunderly ("Wunderly"), Executrix of the Estate of Kenneth

E. Wunderly ("Kenneth"), Deceased, appeals the grant of the motion for

judgment on the pleadings in favor of Saint Luke's Hospital of Bethlehem,

Pennsylvania D/B/A St. Luke's Hospital – Sacred Heart Campus and St. Luke's

Health Network, Inc. D/B/A St. Luke's University Health Network ("St.

Luke's").[1] Wunderly argues the Mental Health Procedures Act, 50 P.S. § 7101, et seq., ("MHPA") does not apply and, even if it did such that St. Luke's had immunity for negligence claims, the complaint sufficiently alleged gross negligence. We affirm.

In June 2021, Wunderly filed a wrongful death and survival action asserting claims of negligence and corporate negligence against St. Luke's. She alleged Kenneth was admitted to St. Luke's Hospital – Sacred Heart Campus on September 28, 2019, and, when admitted, he was documented with Stage I pressure ulcers to his right and left buttocks. Complaint at ¶ 23. During his admission, Kenneth acquired pressure related skin breakdown, pressure wounds, and the deterioration of existing pressure wounds. *Id.* at ¶ 24. She alleged that on or about October 14, 2019, while still a patient at St. Luke's, Kenneth was documented with unstageable pressure ulcers to his right buttocks and posterior perineum, and deep tissue injury pressure wounds to his left buttocks and left heel. *Id.* at ¶ 25. That same day he was transferred to a different facility. *Id.* at ¶ 26. Kenneth died on October 24, 2019. Wunderly alleges the pressure ulcers and wounds caused and/or contributed to Kenneth's death.

_____

[1] Wunderly also asserted claims against Above & Beyond Incorporated d/b/a Above & Beyond Mountain View ("Above & Beyond"). In October 2022, the parties entered into a stipulation agreeing to dismiss Above & Beyond from the matter with prejudice, and the court entered an order dismissing the entity.

Wunderly alleged St. Luke's was negligent by failing to: adopt proper protocols for pressure ulcer prevention; properly assess Kenneth's risk of pressure ulcer development and risk of breakdown in light of his limited mobility and other risk factors; rotate, turn, or position Kenneth to avoid pressure ulcer formation and deterioration and develop a written plan for the same; monitor for pressure ulcer formation; use frequent turning to relieve pressure on pressure points; provide sufficient nutrition to meet Kenneth's needs; identify and properly diagnose Kenneth's pressure ulcers in a timely manner; timely complete weekly skin assessments and document same; prevent formation of pressure ulcers; provide appropriate wound care; timely and properly order and/or implement appropriate pressure ulcer interventions; provide complete and consistent documentation as to the condition of the pressure ulcers and Kenneth's general medical condition; and implement an individualized care plan. *Id.* at ¶ 31. For the corporate negligence claim, Wunderly alleged St. Luke's failed to: use reasonable care in the maintenance of the facility and equipment used for prevention and treatment of pressure wounds; select and retain competent nursing staff; oversee the provision of wound care and bed sore care by the nursing staff; and formulate, adopt, and enforce adequate rules and policies to ensure quality wound care and bed sore prevention. *Id.* at ¶ 36.

In its answer with new matter, St. Luke's alleged that Kenneth was admitted to St. Luke's for mental health treatment under a 302 petition under

the MHPA[2] and remained involuntarily admitted under Section 303.[3] It alleged

it is immune from legal action under Section 114 of the MHPA.

Wunderly filed a reply to the new matter, wherein she denied

paragraphs 69-100 of the new matter as "contain[ing] conclusions of law or

mixed conclusions of fact and law to which no responsive pleading is required

pursuant to the Pennsylvania Rules of Civil Procedure and which are therefore

denied." Plaintiff's Reply to New Matter, filed Nov. 2, 2021, at 1.

St. Luke's moved for judgment on the pleadings. After a hearing, the

court granted the motion and entered judgment in favor of St. Luke's and

---

[2] Under Section 302, "one who is severely mentally ill may be subjected to an involuntary emergency examination if one of three mandatory prerequisites is met: (1) certification of a physician; (2) warrant issued by the county administrator authorizing such examination; or (3) application by a physician or other authorized person who has personally observed actions indicating a need for an emergency application." *Leight v. Univ. of Pittsburgh Physicians*, 243 A.3d 126, 140 (Pa. 2020) (footnote omitted); *See* 50 P.S. § 7302.

[3] Section 303 provides:

> **(a) Persons Subject to Extended Involuntary Emergency Treatment.--**Application for extended involuntary emergency treatment may be made for any person who is being treated pursuant to section 302 whenever the facility determines that the need for emergency treatment is likely to extend beyond 120 hours. The application shall be filed forthwith in the court of common pleas, and shall state the grounds on which extended emergency treatment is believed to be necessary. The application shall state the name of any examining physician and the substance of his opinion regarding the mental condition of the person.

50 P.S. § 7303(a) (footnote omitted).

against Wunderly, concluding St. Luke's was immune under the MHPA unless the conduct was willful or grossly negligent and the complaint failed to set forth facts that would support a finding of willful or grossly negligent conduct.

Wunderly raises the following issues:

> 1. Whether the trial court erred in granting St. Luke's Defendants' Motion for Judgment on the Pleadings because the immunity provisions of the Mental Health Procedures Act do not apply to [Wunderly's] claims?
>
> 2. Whether the trial court erred in granting St. Luke's Defendants' Motion for Judgment on the Pleadings because even if the immunity provisions of the Mental Health Procedures Act do apply to [Wunderly's] claims, the pleadings contain sufficient averments to support a finding that [St. Luke's] actions constitute willful misconduct or gross negligence?

Wunderly's Br. at 8 (suggested answers omitted).

Wunderly's issues challenge the grant of the motion for judgment on the pleadings. Pennsylvania Rule of Civil Procedure 1034 permits a party to move for judgment on the pleadings after the pleadings are closed. Pa.R.C.P. 1034. "Entry of judgment on the pleadings is appropriate when there are no disputed issues of fact and the moving party is entitled to judgment as a matter of law." **Kennedy v. Consol Energy, Inc.**, 116 A.3d 626, 631 (Pa.Super. 2015) (quoting **Sisson v. Stanley**, 109 A.3d 265, 274 (Pa.Super. 2015)) (internal quotation marks omitted). "[W]e will reverse only if the trial court committed a clear error of law or if the pleadings disclose facts that should be submitted to a trier of fact." **Id.** (quoting **Sisson**, 109 A.3d at 274). Further, "[w]e accept

- 5 -

as true all well-pleaded allegations in the complaint." ***Id.*** (quoting ***Sissan***, 109 A.3d at 274). Our scope of review is plenary. ***Id.***

Wunderly first contends that the trial court erred in granting St. Luke's motion for judgment on the pleadings because the immunity provisions of the MHPA do not apply to the claims. Wunderly argues that affording St. Luke's immunity "would not advance the purposes of" the MHPA. Wunderly's Br. at 17. She maintains the development of pressure wounds was not the result of a "treatment decision," arguing that, taking all inferences in favor of Wunderly, "by their very nature, for pressure injuries of this type and severity to develop and deteriorate, [St. Luke's] must have altogether ignored [Kenneth] for prolonged periods of time." ***Id.*** She argues that "offloading pressure from the vulnerable decedent's bony prominences cannot be said to be medical care in the same vein as contemplated by the [MHPA]," as she claims it does nothing to facilitate recovery from a mental illness. ***Id.*** at 17-18. Wunderly attempts to distinguish ***Allen v. Montgomery Hospital***, 696 A.2d 1175 (Pa. 1997). She maintains that the decedent in ***Allen*** was injured by a restraint device intended to permit her to sit up in bed while preventing her from falling out of bed due to her mental health conditions. She argues that here, Kenneth's injures bore "no relation to any treatment for mental health conditions that underpin the immunity provisions of the MHPA." ***Id.*** at 16. She further claims the nursing staff is not a "person who participates in a decision that a person be examined or treated under" the MHPA and therefore immunity does not apply. ***Id.*** at 18.

- 6 -

The MHPA provides that, in the absence of willful misconduct or gross negligence, facilities, physicians, and other authorized people shall be immune from civil and criminal liability for certain decisions related to treatment under the MHPA:

> (a) In the absence of willful misconduct or gross negligence, a county administrator, a director of a facility, a physician, a peace officer or any other authorized person who participates in a decision that a person be examined or treated under this act, or that a person be discharged, or placed under partial hospitalization, outpatient care or leave of absence, or that the restraint upon such person be otherwise reduced, or a county administrator or other authorized person who denies an application for voluntary treatment or for involuntary emergency examination and treatment, shall not be civilly or criminally liable for such decision or for any of its consequences.

50 P.S. § 7114(a). The Pennsylvania Supreme Court has interpreted "person" to include "hospitals and other treatment facilities as well as their employees," reasoning that "denying such entities immunity would undermine the goals of the MHPA." ***Dean v. Bowling Green-Brandywine***, 225 A.3d 859, 869 (Pa. 2020).

Further, the Supreme Court in ***Allen*** explained that the immunity under the MHPA includes "medical care coincident to mental health care," which is "commonly understood to include the prevention or alleviation of both physical and mental illness." ***Allen***, 696 A.2d at 1179. The Court relied on the definition section of the MHPA, which defines "adequate treatment" and "treatment" as:

> Adequate treatment means a course of treatment designed and administered to *alleviate a person's pain and distress* and to maximize the probability of his recovery from mental

illness. It shall be provided to all persons in treatment who are subject to this act. It may include inpatient treatment, partial hospitalization, or outpatient treatment. *Adequate inpatient treatment shall include such* accommodations, diet, heat, light, sanitary facilities, clothing[,] recreation, education and *medical care as are necessary to maintain decent, safe and healthful living conditions.*

Treatment shall include diagnosis, evaluation, therapy, or rehabilitation needed to alleviate pain and distress and *to facilitate the recovery of a person from mental illness and shall also include care and other services that supplement treatment and aid or promote such recovery.*

*Id.* at 1178-79 (quoting 50 P.S. § 7104) (emphasis in **Allen**).

In **Allen**, the Court concluded that Montgomery Hospital was immune under the MHPA where it treated a patient from the Norristown State Hospital for dehydration and a fever. While at Montgomery Hospital, the patient was kept in a posey vest restraint, which is a "vest-like restraint which is tied to the patient's bed in order to keep the patient from falling out of bed, but which allows the patient to move his or her arms and to sit up in bed." *Id.* at 1176 n.1. Shortly before the patient was going to be transferred back to Norristown State Hospital, a nurse discovered the patient hanging about six inches above the floor with the posey restraint around her neck. *Id.* at 1176. The patient survived but suffered permanent brain damage. *Id.* The Court concluded the hospital could invoke the immunity provision of the MHPA unless its actions constituted gross negligence. The Court reasoned that the patient was mentally ill and in acute need of medical care and the care provided was "designed to facilitate the recovery of a person from mental illness." *Id.* at 1179 (internal quotation marks omitted).

- 8 -

Here, the trial court concluded that the treatment Kenneth received for his pressure ulcers was incidental to the treatment for his dementia and mental health. Trial Court Opinion, filed Mar. 9, 2022, at 9. It reasoned that Kenneth was involuntarily admitted to St. Luke's under the MHPA and treated for aggressive and combative behavior related to his dementia diagnosis. *Id.* It pointed out the primary reason for the hospitalization was to stabilize his mental health, and the treatment of his pressure ulcers was "coincident to that mental health treatment." *Id.* The court therefore concluded that St. Luke's was immune from suit unless the complaint alleged willful or grossly negligent conduct.

The trial court did not commit a clear error of law in finding the MHPA provided immunity unless the conduct was willful or grossly negligent. The treatment for and prevention of pressure ulcers and other wounds was coincident to the mental health care being provided by St. Luke's, as it was medical care "necessary to maintain decent, safe and healthful living conditions," and treatment that aided or promoted a recovery from a mental illness. *See Allen*, 696 A.2d at 1179.

Wunderly next maintains that, even if MHPA immunity applies here, the allegations of the complaint were sufficient to support an inference that St. Luke's conduct was grossly negligent. She maintains that, "[a]t a minimum, it was a determination that should have been left for a jury to resolve." Wunderly's Br. at 13. She argues the staff failed to monitor Kenneth or provide basic, timely turning and repositioning. Further, St. Luke's systematic failures

allegedly included a failure to retain competent nursing staff and a failure to oversee proper wound care.

Wunderly argues that it can be reasonably inferred from the allegations that St. Luke's grossly deviated from the ordinary standard of care and had staff that were inadequate for preventing severe pressure wounds. She argues that the failure "to take basic steps to ensure [Kenneth's] skin integrity demonstrate[s] that [St. Luke's] personnel could be found to be culpable for conduct that is substantially more than ordinary carelessness, inadvertence, laxity or indifference." *Id.* at 22. She claims she was not able to develop evidence to demonstrate the nature and extent of the failures because her claims were dismissed before discovery. She likens the case to *Potts v. Step By Step, Inc.*, 26 A.3d 1115 (Pa.Super. 2011), and *Bloom v. DuBois Reg'l Med. Ctr.*, 597 A.2d 671, 679 (Pa.Super. 1991).

"[T]he term gross negligence . . . mean[s] a form of negligence where the facts support substantially more than ordinary carelessness, inadvertence, laxity, or indifference. The behavior of the defendant must be flagrant, grossly deviating from the ordinary standard of care." *Albright v. Abington Meml. Hosp.*, 696 A.2d 1159, 1164 (Pa. 1997) (quoting *Bloom*, 597 A.2d at 679 (Pa.Super. 1991)). Although "it is generally true that the issue of whether a given set of facts satisfies the definition of gross negligence is a question of fact to be determined by a jury, a court may take the issue from a jury, and decide the issue as a matter of law, if the conduct in question falls short of

gross negligence, the case is entirely free from doubt, and no reasonable jury could find gross negligence." *Id.* at 1164-65.

In **Bloom**, this Court concluded the complaint could "be construed to plead facts sufficient to give rise to a finding of gross negligence." 597 A.2d at 679. We noted that the operative complaint "alleged that the defendants, who held themselves out as competent to provide psychiatric treatment to one in the position of [the plaintiff], completely failed to diagnose her mental condition and treat her in a manner that would protect her from serious physical harm." *Id.* The complaint alleged that upon her admission the plaintiff showed indications of "severe psychiatric and psychological disturbances, . . . depression and paranoia," which created an "unreasonably high probability of self-destructive actions on her part." *Id.* at 675. Further, it alleged "the defendants all knew or had reason to know that their actions in dealing with [the plaintiff] created an unreasonably high probability of self-destructive harm for [the plaintiff] and that all defendants acted in conscious disregard of this substantial risk." *Id.* Finally, the amended complaint contained "specific allegations of wrongdoing by defendants, including, *inter alia*, that the defendants had failed to obtain adequate information concerning [the plaintiff's] possibly suicidal condition on admission and had failed properly to medicate and clinically treat her." *Id.* We pointed out that the defendants were informed of the patient's mental disorder, but "failed to take adequate precautions to assure her safety," such that she attempted suicide while in the facility. *Id.* at 679. We concluded that the "allegations encompass the

potential of showing conduct on the part of the defendants that might be considered grossly negligent." *Id.*

In *Potts*, the plaintiff's daughter, who had cerebral palsy, intellectual disability, and neuromuscular scoliosis, lived in a facility run by Step By Step, Inc. 26 A.3d at 1117. She became ill, and ultimately died from a perforated gastric ulcer. *Id.* This Court found the complaint alleged gross negligence. We explained that a nurse had specifically instructed two employees to contact her immediately if the patient vomited or had problems holding down fluids, but the employees did not contact her when the resident vomited, and no staff member administered CPR or called 9–1–1. *Id.* at 1120. We pointed out that during the delay, the patient's condition worsened. We concluded that, based on the facts pled in the complaint, "a jury could find Step By Step's actions constituted gross negligence, as they could be interpreted as 'flagrant, grossly deviating from the ordinary standard of care.'" *Id.* (citation omitted).

Here, the trial court found the allegations in the complaint sounded in ordinary negligence and were insufficient as a matter of law to support a finding of gross negligence or of willful conduct. It pointed out that the two counts alleged against St. Luke's were negligence and corporate negligence, and the allegations included that St. Luke's failed to properly assess, treat, diagnose, and monitor the pressure ulcers, provide adequate care, and/or turn and reposition Kenneth. The court concluded the allegations and factual averments "are not so 'flagrant' or 'extreme' to go beyond ordinary 'carelessness, inadvertence, laxity, or indifference.'" Trial Court Opinion at 10.

- 12 -

It reasoned that the "allegations are simply that [Kenneth's] pre-existing pressure ulcers deteriorated over the course of his two-and-a-half week stay at St. Luke's, as well as during his ten-day stay at Above & Beyond, all of which may have caused and/or contributed to his death." *Id.* The court noted Wunderly did not allege any facts related to the cause of the deterioration or the sequence of events related to the treatment received. It noted that there were no allegations that nursing staff left Kenneth unattended for days or weeks, that he received no care, that anyone inflicted harm on him, or that his injuries were completely ignored. *Id.*

The court did not err in finding the complaint did not allege gross negligence. The allegations raise an issue of ordinary negligence and do not rise to the level of gross negligence. The allegations do not constitute flagrant conduct or conduct that grossly deviated from the standard of care. Rather, they include allegations of ordinary negligence, such as not properly caring for the pressure ulcers and wounds. Unlike in *Bloom*, there is no allegation that St. Luke's had specific knowledge of harm and failed to take any action. Similarly, unlike in *Potts*, there are no allegations the employees ignored specific care instructions.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/14/2023